Gary M. TIBONI, Plaintiff–Appellant,

v.

The CLEVELAND TRINIDAD PAVING COMPANY, Defendant–Appellee.

No. 93–3318.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 9, 1994.

Decided Sept. 30, 1994.

**534**

Kevin P. Prendergast (argued), Climaco, Climaco, Seminatore, Lefkowitz & Garofoli, Tim L. Collins (briefed), John M. Masters (briefed), Masters & Collins, Cleveland, OH, for plaintiff-appellant.

Kenneth J. Walsh, James M. Stone, Robert S. Stone (argued and briefed), McDonald, Hopkins, Burke & Haber, Cleveland, OH, for defendant-appellee.

Before: KEITH, WELLFORD and MILBURN, Circuit Judges.

WELLFORD, Circuit Judge.

Gary M. Tiboni as trustee of a local union and multi-employer welfare fund ("the fund") in December, 1991, sued defendant Cleveland Trinidad Paving Company ("Trinidad"), one of the employer signatories, for an alleged violation for refusing to turn over financial data for an audit to determine whether Trinidad was in compliance with ERISA and its alleged contractual obligation under a collective bargaining agreement ("CBA") with the local union.[1] Trinidad moved to dismiss for failure to state a claim. Plaintiff, on the other hand, moved for partial summary judgment. Subsequently, Trinidad responded, but also sought equitable relief and moved to add the local union and its officers as additional parties following a strike by that union. Following actions by the district court on these motions, the parties entered into a settlement agreement in September, 1992.

This agreement was reached at or about the time unfair labor practice charges were filed by independent contractors with the NLRB against Tiboni's union and Trinidad alleging that the union and Trinidad had engaged in an illegal secondary boycott scheme. The NLRB charge asserted that the union, in striking and picketing Trinidad, was attempting to force these contractors to enter into contracts with the union. The NLRB, after an investigation, found probable cause of a violation of the NLRA and issued an administrative complaint against the union and Trinidad. Trinidad then filed its own charge alleging that Article V (subcontracting) of the CBA is void and the union's attempt to enforce the provisions is an unfair labor practice.

In January and February, 1993, plaintiff moved to enforce the settlement and for other relief and for a temporary restraining order against Trinidad. After a hearing, the district court denied the relief sought by plaintiff, and dismissed the action without prejudice "subject to re-open[ing] ..., upon motion by either party, if there are unresolved issues after the NLRB's final determination." Plaintiff has filed a timely appeal.

Plaintiff claims that Trinidad has improperly attempted by its actions "to circumvent

---

1. The local union was No. 436, Excavating Building Material and Construction Drivers (Teamsters); the fund was established under a welfare and pension plan for the benefit of union members.

and collaterally attack the jurisdiction and [prior] orders" of the district court. Trinidad maintains that the district court appropriately refused to enjoin administrative proceedings before the NLRB dealing with an unfair labor practice complaint against Local 436, and that the district court properly refused to enforce a purported illegal "hot cargo" clause in the CBA. Trinidad contends that it was coerced into the settlement agreement with Local 436 under duress during or after a strike designed to enforce against it (and others) the "hot cargo" clause.[2] See Section 8(e) of the NLRA, 29 U.S.C. § 158(e), (which declares as "unenforceable and void" a union practice of requiring an employer not to deal with other employers based on union affiliation); *see also Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 84, 102 S.Ct. 851, 860, 70 L.Ed.2d 833 (1982) (§ 8(e) renders hot-cargo clauses void at their inception and at all times unenforceable).

The district court noted that

[T]hree independent trucking companies filed a charge with the National Labor Relations Board (NLRB), alleging that the Union and Cleveland Trinidad were engaged in an illegal secondary boycott scheme in violation of the hot cargo clause. Specifically, the companies alleged that the Union, in picketing Cleveland Trinidad in August 1992, was attempting to force independent contractors to join the Union. After over two months of investigation, the NLRB found that there was probable cause of a violation of the National Labor Relations Act, and issued an administrative complaint against the Union and Cleveland Trinidad. In December 1992, Cleveland Trinidad filed its own charge against the Union, alleging an illegal secondary boycott scheme. This charge was consolidated with the other complaint. In addition, Cleveland Trinidad claimed that the August 24 settlement agreement was illegal because Cleveland Trinidad was coerced into signing the agreement because of a Union strike against Cleveland Trinidad on or about the same date the agreement was signed. A hearing was held before an administrative law judge in January 1993.

As a consequence, the district court concluded, in effect, that it should abstain pending an NLRB resolution of unfair labor practice charges. It held:

While Tiboni is correct that this Court retains jurisdiction to enforce the agreement, this Court believes that the issue of the secondary boycott and the issue of the legality of the settlement agreement are so intertwined that it is appropriate to await the resolution of the dispute currently pending before the NLRB before taking any action to enforce the settlement agreement. Therefore, Tiboni's motion to enforce the settlement agreement is denied.

Plaintiff's counsel, who is also union counsel, concedes, that they unsuccessfully sought to have the ALJ stay the proceedings before the NLRB to await the district court's ruling. Plaintiff's counsel also concedes that issues in the separate Board and district court proceedings "are inextricably intertwined." Furthermore, he concedes that "[t]he NLRB proceeding judge can award relief distinct from that available in the federal trial court." Both tribunals had before them the issue of the illegality of the so-called "hot cargo" clause in the CBA.

Plaintiff relies upon *United States v. Int'l Brotherhood of Teamsters,* 728 F.Supp. 1032 (S.D.N.Y.1990), and the All Writs Act, 28 U.S.C. § 1651, in support of its argument that the district court was in error in not itself deciding the alleged illegality of contract issues. It also claims that § 301 of the LMRA, 29 U.S.C. § 301, preempts the NLRB from deciding that issue, citing *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 83–84, 102 S.Ct. 851, 859–60, 70 L.Ed.2d 833 (1982), among other cases. Plaintiff argues, in substance, that the district court has "primary jurisdiction over matters which primarily involve interpretation of [CBA] provisions."

The special circumstances in this case which distinguish it from the authority relied upon by plaintiff is that Trinidad relies not

---

**2.** Sometimes referred to as an illegal secondary boycott/hot cargo provision allegedly requiring Trinidad to boycott the services of non-union subcontractors.

**536**

only upon the illegality of the CBA, but also challenges the validity of the settlement agreement which purported to resolve the controversy before the district court by reason of alleged union coercion and attempted alleged illegal enforcement of a hot cargo secondary boycott situation.

 We do not construe *Kaiser Steel,* to preempt the NLRB's consideration of the effects of an illegal hot cargo clause under the NLRA. *Kaiser Steel* did hold that the question of legality of the alleged hot cargo clause under § 8(e) of the NLRA was not "within the exclusive jurisdiction of the ... Board." *Id.* at 83, 102 S.Ct. at 859. Thus, a district court does have authority in the context of a labor dispute to "adjudicate" an employer's defense against a union's charge of breach of contract. *Kaiser Steel* also holds that "a federal court has a duty to determine whether a contract violates federal law before enforcing it." *Id.* at 83, 102 S.Ct. at 859. *Kaiser Steel,* however, does not mandate federal court preemption over the NLRB; it holds that "only the Board may provide affirmative remedies for unfair labor practices." At the same time, if a federal court has before it the question of enforcement of a contract with a hot cargo clause, *Kaiser Steel* "mandates that it may not enforce a contract provision which violates 8(e)." *Id.* at 86, 102 S.Ct. at 861.

"We will reverse a district court's decision to enjoin another proceeding only if the district court abused its discretion." *Municipal Energy Agency v. Big Rivers Electric Corp.,* 804 F.2d 338, 343 (5th Cir.1986). We do not agree with plaintiff's contention set forth in his brief and at argument that the district court had original and exclusive authority to deal with the question of enforcement of the contract in question and should not have abstained to permit a "collateral attack" before the NLRB.

 Rather, we are persuaded that under the circumstances the district court acted within its sound discretion in awaiting the resolution of the disputes pending before the NLRB. The separate proceedings are indeed closely intertwined. The NLRB has expertise in treating claimed illegal boycotts, and its decisions would be of great signifi-

cance to the district court in its decision whether to grant Tiboni the relief he seeks against Trinidad.

Accordingly, we **AFFIRM** the action of the district court.