the August 17 order did not substantively alter the May 6 judgment in any way. It did not "close the case"; indeed, the district court's order indicated that the case had already been closed. J.A. at 74 (D. Ct. Order 8/17/98) ("*[A]lthough* this case is closed, plaintiff continues to inundate the court with motions." (emphasis added)). Nor did the August 17 order eliminate the court's retention of jurisdiction. Futernick may still file motions in the case, although he must now obtain leave of the district court to do so.

Futernick also argues that the order requiring him to obtain the court's permission before filing any further motions violates his constitutional right to due process and equal protection. However, we have previously upheld a district court's issuance of a similar order. *See Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Cir. 1987) ("[I]t is clear that the plaintiffs are vexatious litigants who have filed many complaints concerning the same 1972 automobile accident. The district court entered an order requiring leave of court before the plaintiffs filed any further complaints. This requirement is the proper method for handling the complaints of prolific litigators, and the procedure does not violate the first amendment."). In light of the fact that Futernick was inundating the district court with repetitive motions, the district court's order was not erroneous.

### III. CONCLUSION

For the foregoing reasons, we **DISMISS** Futernick's appeal of the district court's April 14 and May 6 judgments as untimely and **AFFIRM** the district court's denial of post-judgment relief.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0089P (6th Cir.)
File Name: 00a0089p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

SHELDON FUTERNICK,
  *Plaintiff-Appellant,*

  *v.*                          No. 98-2003

SUMPTER TOWNSHIP; HELEN TEALL, BARBARA DUDEK, ARNESS COX, and BARNEY BAN, Sumpter Township Trustees; MARVIN BANOTAI, Sumpter Township Supervisor; GLENN BOWLES, Sumpter Township Administrator; JOAN ODDY, Sumpter Township Clerk; JOHN MORGAN, Township Treasurer, jointly and severally,
  *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 94-74296—Robert E. DeMascio, District Judge.

Argued: February 4, 2000

Decided and Filed:  March 13, 2000

Before:  NELSON, MOORE, and COLE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:**  Thomas G. Plunkett, WILLIAMS, WILLIAMS, RUBY & PLUNKETT, Birmingham, Michigan, for Appellant. Christopher T. Koch, ABBOTT, NICHOLSON, QUILTER, ESSHAKI & YOUNGBLOOD, Detroit, Michigan, for Appellees.  **ON BRIEF:**  Daniel Noveck, NOVECK & SKLAR, Birmingham, Michigan, for Appellant. Christopher T. Koch, ABBOTT, NICHOLSON, QUILTER, ESSHAKI & YOUNGBLOOD, Detroit, Michigan, Julie McCann O'Connor, O'CONNOR, DeGRAZIA & TAMM, Bloomfield Hills, Michigan, for Appellees.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge.  This case involves a settlement agreement obligating defendant-appellee Sumpter Township to construct sewer lines to plaintiff-appellant Sheldon Futernick's mobile home park, Holiday Woods. The agreement provided that the lines would be constructed with the proceeds of a bond sale to be scheduled "as quickly as possible."  Although the agreement was entered on August 25, 1993, the Township has not yet undertaken a bond sale or begun construction of the sewer lines to Holiday Woods.

Because of this delay, Futernick filed suit in federal district court against the Township and various of its officials, alleging that the Township had breached the settlement agreement and requesting specific performance.  After a bench trial, the district court concluded that, although there had been substantial delays, the Township had not breached

---

a Rule 60(b) motion for an abuse of discretion.  *See United States v. Universal Management Servs., Inc.*, 191 F.3d 750, 757 (6th Cir. 1999) (citing *Hood v. Hood*, 59 F.3d 40, 42 (6th Cir. 1995)).  "In reviewing an order denying Rule 60(b) relief, we have no occasion to review the underlying judgment . . . . Instead, we merely inquire as to whether one of the specified circumstances exists in which [the appellant] is entitled to reopen the merits of his underlying claims."  *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 268 (6th Cir. 1998).

We conclude that Futernick's post-judgment motion was properly denied because Futernick provided no reason that would justify relief from the district court's judgment.  Only three months prior to the filing of Futernick's motion, the district court considered the very same issues and ruled that the Township, due in part to its financial difficulties, had not breached its obligation to proceed as quickly as possible with the bond sale.  In his motion for post-judgment relief, Futernick did not provide any new information regarding the Township's financial position.  Without additional evidence tending to prove that the Township had the requisite revenue to support a thirteen-million-dollar bond issue, the district court properly refused to alter its judgment.  Moreover, Futernick's claim that the Township's monthly reports did not comply with the district court's directive had been rejected the previous month in the court's order denying Futernick's first post-judgment motion. J.A. at 73 (D. Ct. Order 7/15/98) ("[T]he reports that defendants have prepared and submitted to the court fully comply with the Amended Judgment.").

Finally, Futernick takes issue with the district court's statement regarding the case being closed and its order that no further motions may be filed without first seeking leave of the court. Futernick alleges that the August 17 order "closing the case" was an improper substantive modification of the May 6 amended judgment providing that the court would retain jurisdiction until the sewer had been constructed. However,

_____

R. CIV. P. 60(b).

($1,000.00) a day until such monthly report is filed. The first of such reports is due June 1, 1998.

J.A. at 70-71 (D. Ct. Amended J. 5/6/98). Futernick claimed in his motion that none of the three reports that the Township had submitted pursuant to the court's order "has outlined in detail precisely what steps Sumpter Township has taken toward the issuance of bonds for the construction of Phase II of the sewer, as this Court ordered." J.A. at 112 (Post-J. Mot. 8/11/98).

On August 17, 1998, the district court denied Futernick's post-judgment motion. The district court noted that "although this case is closed, plaintiff continues to inundate the court with motions," and it "ordered that no further motions, or any other pleading shall be filed without first seeking leave of court." J.A. at 74 (D. Ct. Order 8/17/98).[6] It is this order that Futernick now challenges.

Despite the title that Futernick provides, his post-judgment motion is not a motion to enforce a settlement agreement in the ordinary sense. Futernick's post-judgment motion instead seeks the same relief that was denied in the April and May judgments — namely, a determination that the Township is in breach of the settlement agreement and an order compelling the Township to proceed immediately with the bond sale. Because Futernick's motion really seeks modification of the April 14 and May 6 judgments, we will treat Futernick's post-judgment motion as one brought pursuant to Federal Rule of Civil Procedure 60(b).[7] We review a district court's denial of

---

[6] On August 14, 1998, Futernick filed a motion to dismiss without prejudice his August 11 motion for enforcement of the settlement agreement. Having denied the August 11 motion, the district court denied the August 14 motion as moot.

[7] Rule 60(b) provides in relevant part that "the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding" for any one of five enumerated reasons, as well as for "any other reason justifying relief from the operation of the judgment." FED.

its obligation under the settlement agreement. Futernick now appeals that decision, as well as the district court's denial of his post-judgment motion to enforce the settlement agreement. Because Futernick's appeal of the district court's judgment that the Township had not breached the settlement agreement is untimely, we **DISMISS** that portion of his appeal. Concluding that Futernick has presented no reason justifying relief from the district court's judgment, we **AFFIRM** the district court's denial of post-judgment relief.

## I.  BACKGROUND

Sheldon Futernick is the owner of Holiday West Mobile Home Park and Holiday Woods Mobile Home Park, which are located in Sumpter Township. In 1993, Futernick sued Sumpter Township and Township officials in federal district court alleging violations of 42 U.S.C. § 1983 and various state laws. Futernick sought an injunction prohibiting the Township from constructing a sewer system that did not include free hook-up status for his mobile home parks.

The parties resolved the suit by way of a settlement agreement, which was never reduced to writing but which was placed on the record on August 25, 1993. The agreement provides:

Number one. The Township shall construct sewer lines to Holiday West and Holiday Woods Mobile Home Parks. The line to Holiday West [(hereinafter referred to as "Phase I")] will be constructed from the proceeds of the initial bond sale of $3.6 million. The line to Holiday Woods [(hereinafter referred to as "Phase II")] will be constructed from the proceeds of the second scheduled bond sale. Sumpter Township shall obtain the second bond sale as quickly as possible.

Number two. Plaintiff shall pay a total of $625,000 toward the construction costs of the sewer lines to Holiday West and Holiday Woods. This payment will be in lieu of any tap fees or connection charges for existing

units at either Holiday West or Holiday Woods. Payment of such amount shall be made as follows:

(A)  The sum of $225,000 shall be paid within seven days of the date of commencement of flow of sewage from Holiday West into the Sumpter sewer system.

(B)  The remaining $400,000 shall be paid within seven days of the date of commencement of flow of sewage from Holiday Woods into the Sumpter sewer system.

Three.  The Township agrees that no other mobile home park will receive more favorable fee on a per-site basis with regard to the amount paid for the sewer construction, and/or connection than Plaintiff.

Number Four.  The complaint against the Township and its officials will be dismissed with prejudice and without costs or attorneys fees to either party at the time that construction to Holiday Woods is completed. Prosecution of the action will be stayed with the Court's permission pending that event.

Number Five.  The foregoing settlement is contingent upon agreement by the Michigan Department of Natural Resources to forego any enforcement action or effort to require compliance with the facility construction requirements of the Holiday Woods permit or the effluent limits set therein, pending construction of the sewer connection to Holiday Woods, and to suspend further proceedings toward a new permit for . . . Holiday West; pending construction of the sewer connection to Holiday West.

Number Six.  Notwithstanding the foregoing paragraphs four and five, Plaintiff agrees to withdraw his claim for injunctive relief with regard to the issuance and delivery of the initial bond issue covering inter alia construction to Holiday West, and a consent order will be presented to the Court for entry accordingly.

"Motion for Enforcement of Settlement Agreement."  In his motion, Futernick asked the district court to order the Township to begin immediately the process of issuing bonds for the construction of Phase II.

The motion was based on two of the district court's prior statements.  First, in the court's April 14 findings of fact and conclusions of law, the district court concluded by stating:

We do not, however, mean to imply that the Township no longer has an obligation under the settlement agreement.  They are obligated to provide sewer service to Holiday Woods and to have a bond sale.  To this end, the Township must immediately re-evaluate their financial ability to issue bonds for Phase II.  There is evidence to indicate that the Township does indeed now have sufficient funds for the sale.  The design has been completed and the project has been bid.  While the court does not fault the Township for the delays from August of 1994 to the present, the Township is running out of excuses for their non-performance.

J.A. at 108-09 (D. Ct. Findings of Fact and Conclusions of Law 4/14/98).  In his motion, Futernick argued: "It is now more than 90 days since the entry of those Findings of Fact and Conclusions of Law and the Township has not yet re-evaluated their financial ability to issue bonds for Phase II. The Township is not acting 'immediately' as this Court mandated."  J.A. at 112 (Post-J. Mot. 8/11/98).  Second, in the district court's amended judgment providing for the court's retention of jurisdiction until completion of the parties' obligations under the settlement agreement, the district court stated:

It is further ordered that defendant Sumpter Township shall submit monthly reports to the court outlining in detail precisely what steps Sumpter Township has taken towards the issuance of bonds for construction of Phase II of the sewer.
It is further ordered that failing to file a timely report, Sumpter Township will be fined One Thousand Dollars

jurisdiction on a court than a notice never filed. Attempts to resurrect notices of appeal must be treated the same as belated notices of appeal. The time limits for filing an appeal require the losing party to choose between accepting the judgment and pursuing appellate review. The loser may not dither. Filing and dismissing an appeal prevents appellate review, and we do not think that it should place the judgment in limbo — open to review whenever the losing side changes its mind. The structure of the rules is set against such delay and uncertainty.

*Barrow v. Falck*, 977 F.2d 1100, 1103 (7th Cir. 1992) (citations omitted). While exceptions to this rule may lie in extraordinary circumstances, *see e.g.*, *Turker v. Ohio Dep't of Rehabilitation & Corrections*, 157 F.3d 453, 456 (6th Cir. 1998) (explaining that reinstatement had been granted when an attorney dismissed the appeal without the consent of the client), Futernick's misunderstanding of the law does not present such a circumstance.

Therefore, we dismiss Futernick's appeal of the district court's April 14 and May 6 judgments. Because Futernick's appeal is timely with regard to the August 17 and September 1 post-judgment orders, we now proceed to consider the merits of Futernick's challenge to those orders.[5]

## B. Denial of Post-Judgment Relief

Futernick's final claim is that "the trial court's order of August 17, 1998, which denied Sheldon Futernick's post-judgment motion for enforcement of the settlement agreement was clearly erroneous and an abuse of discretion which warrants reversal." Appellant's Br. at 33. Futernick's motion, which was filed on August 11, 1998, is styled a

[5]Although Futernick's September 8 notice of appeal sought to challenge both the August 17 and September 1 orders (as well as the July 15 order), in his brief Futernick argues only that the August 17 order was erroneous. We therefore direct our attention solely to that order.

Joint Appendix (hereinafter "J.A.") at 82-83 (D. Ct. Op. Denying Mots. for Summ. J. 6/17/97) (ellipsis in original). After entry of the settlement agreement,[1] the district court dismissed the claims against the Township.[2] A clean "non-litigation certificate" was then issued, making possible the closing of the initial bond sale.

Phase I of the Sumpter sewer system providing service to Holiday West was timely constructed with the proceeds of that first bond sale, and Holiday West is not at issue in this case. Phase I of the sewer system involved the installation of a sewer trunk line along Rawsonville Road to Willis Road. The Phase I system, however, does not extend far enough to serve Holiday Woods. Futernick believes that the Township should have extended the Willis Road Phase I sewer to Holiday Woods; the Township chose, however, to construct the Phase II sewer along a different and more complete route that would serve Holiday Woods.

In October of 1994, Futernick filed a diversity action in federal district court naming as defendants Sumpter Township and various Township officials.[3] Futernick alleged that

[1]The State of Michigan defendants refused to join in the settlement agreement, but in a letter to the district court Futernick waived the contingency stated in paragraph five.

[2]Futernick appealed the district court's dismissal to a panel of this court. *See Futernick v. Sumpter Township*, 78 F.3d 1051 (6th Cir.), *cert. denied*, 519 U.S. 928 (1996). We affirmed the district court's dismissal of Futernick's claims against the Township, rejecting his argument that the terms of the settlement agreement required the district court to retain jurisdiction of the case until the Township fulfilled its obligations under the agreement. *See id.* at 1054-55. Additionally, we affirmed the district court's dismissal of Futernick's claims against the State of Michigan defendants, who had not joined in the settlement agreement, on the basis that Futernick failed to state a claim upon which relief could be granted. *See id.* at 1055, 1060.

[3]The officials named in the complaint are Helen Teall, Barbara Dudek, Arness Cox, and Barney Ban, Sumpter Township Trustees; Marvin Banotai, Sumpter Township Supervisor; Glenn Bowles, Sumpter

Sumpter Township had breached the settlement agreement and asked the court to enforce the terms of the agreement. Both Futernick and the Township filed motions for summary judgment, and on June 17, 1997, the district court, finding that genuine issues of material fact existed, entered an opinion denying both motions. The district court explained that the parties' dispute focused on the first paragraph of the settlement agreement. The court reasoned:

> Plaintiff argues that this paragraph creates an absolute obligation on the part of the Township to build a sewer line to Holiday Woods, whereas Defendant argues the second bond sale is a condition precedent that must occur before the sewer line is to be built. The Court concludes that the second bond sale is a condition precedent.
>
> . . . The parties' settlement agreement provides that "[t]he line to Holiday Woods will be constructed from the proceeds of the second scheduled bond sale." A fair and reasonable interpretation of this language is that the parties' [sic] intended that the sewer line would be constructed after the occurrence of a future event — the second scheduled bond sale.

J.A. at 88-89 (citation omitted) (D. Ct. Op. Denying Mots. for Summ. J. 6/17/97).

Trial commenced on February 23, 1998, and the district court issued findings of fact and conclusions of law on April 14, 1998. The district court concluded that, although the "Phase II project has been fraught with design delays and financing complications," these delays did not constitute a breach of the Township's obligation to construct Phase II "as quickly as possible." J.A. at 107 (D. Ct. Findings of Fact and Conclusions of Law 4/14/98). The court explained that the Township still had an obligation under the agreement to provide sewer service to Holiday Woods and to have a bond

---

Township Administrator; Joan Oddy, Sumpter Township Clerk; and John Morgan, Township Treasurer. For purposes of this opinion, we shall refer to the officials and Sumpter Township collectively as "the Township."

was entered in a previous case. The district court therefore did not simply retain jurisdiction to protect and enforce its judgment, Futernick's counsel contended, but rather reopened the merits of the case. Although the district court's retention of jurisdiction over a previously-entered settlement agreement technically differentiates this case from a *Kokkonen*-type case, we conclude that there is no meaningful difference between the two for purposes of finality. In *Kokkonen*, the Supreme Court explained that a district court could retain jurisdiction by making "the parties' obligation to comply with the terms of the settlement agreement . . . part of the order of dismissal." *Kokkonen*, 511 U.S. at 381. This is precisely what the district court did in its May 6 judgment; the court retained jurisdiction to ensure that the settlement agreement would be executed, but it did not in any way qualify its ruling that the Township had not breached the settlement agreement. We do not interpret the May 6 judgment as reopening the merits of the breach of contract issue. Futernick's appeal of the district court's April 14 and May 6 judgments is therefore untimely.

Futernick's first appeal, which was pending in this court when the district court entered its May 6 amended judgment, would have been timely with regard to the April 14 and May 6 judgments were it not voluntarily dismissed based upon an erroneous understanding of the law. *See* FED. R. APP. P. 4(a)(4)(B); *supra* n.4. We decline, however, to reinstate Futernick's first appeal. If appellants were permitted to dismiss voluntarily a timely appeal and then reopen the appeal at their pleasure, there is no limit to the amount of time that could pass before a final judgment is reviewed. Appellants would essentially have the ability to make an end run around Federal Rule of Appellate Procedure 4(a)(1). Such a result would completely undermine the purposes of the statutory time limits for appeal and would compromise the finality of judgments. As the Seventh Circuit has explained:

> A timely notice of appeal is essential to appellate jurisdiction. A notice of appeal filed and dismissed voluntarily is gone, no more effective in conferring

retention of jurisdiction over a settlement agreement, or its incorporation of that agreement into its final order, satisfies any jurisdictional concerns," and treating the two judgments below as "final judgments," despite their express retention of "jurisdiction for purposes of implementing and enforcing the settlement agreements and final judgment orders"). Furthermore, it is well settled that the fact that a judgment is subject to reservations or conditions does not automatically deprive a judgment of finality. *See generally* CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3915.3, at 287 (2d ed. 1992); *cf. Tiboni v. Cleveland Trinidad Paving Co.*, 36 F.3d 533, 534 (6th Cir. 1994) (assuming jurisdiction, without discussing the issue of finality, over an appeal taken from a district court order denying a motion to enforce a settlement agreement and dismissing the action without prejudice subject to reopening upon motion by either party); *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 711-12 (1st Cir. 1998) (concluding that a district court order denying a motion to compel *ore tenus* while retaining jurisdiction in order to review individual items *in camera* for materiality and "to order specific material produced upon a showing of particularized need" was final, and stating that "[i]t is settled law that a court's retention of jurisdiction in order to facilitate the consideration of possible future relief does not undermine the finality of an otherwise appealable order"); *Pioche Mines Consol., Inc. v. Fidelity-Philadelphia Trust Co.*, 191 F.2d 399, 400 (9th Cir. 1951) ("Assuming that the other requirements of finality are met, a 'reservation to make further orders does not mean orders inconsistent with the finality of the judgment.'" (quotation omitted)).

At oral argument, Futernick's counsel did not seriously contend that the type of jurisdictional reservation contemplated in *Kokkonen* would render a judgment non-final. Instead, he contended that the district court's May 6 judgment contained an "extraordinary" retention of jurisdiction that serves to distinguish the case at bar from a *Kokkonen*-type reservation. He argued that, unlike in a *Kokkonen*-type reservation, the parties' settlement agreement

sale, and it indicated that "[t]here is evidence to indicate that the Township does indeed now have sufficient funds for the sale." J.A. at 108-09 (D. Ct. Findings of Fact and Conclusions of Law 4/14/98). The same day, the district court issued a judgment dismissing Futernick's complaint. J.A. at 69 (D. Ct. J. 4/14/98). On May 6, 1998, upon Futernick's motion, the district court amended its judgment "to provide for the court's retention of jurisdiction until completion of the parties' obligations under the settlement agreement." J.A. at 70 (D. Ct. Amended J. 5/6/98). Although Futernick had filed a timely appeal of the district court's April 14 judgment, Futernick voluntarily dismissed the appeal on the belief that the court's retention of jurisdiction rendered the judgment non-final.

After issuance of the amended judgment, Futernick filed several post-judgment motions for enforcement of the settlement agreement; the district court denied these motions on July 15, 1998, August 17, 1998, and September 1, 1998. In its August 17 order denying Futernick's second post-judgment motion, the district court ordered that "no further motions, or any other pleading shall be filed without first seeking leave of the court." J.A. at 74 (D. Ct. Order 8/17/98). Believing this to be the district court's final judgment, Futernick filed a second notice of appeal on September 8, 1998. The September 8 notice of appeal sought to challenge not only the district court's orders denying post-judgment relief, but also the district court's April 14 and May 6 judgments.

## II. ANALYSIS

### A. Jurisdiction

Before proceeding to the merits, we must first address Sumpter Township's argument that Futernick's September 8 appeal should be dismissed as untimely. Federal Rule of Appellate Procedure 4(a)(1)(A) provides that "[i]n a civil case," "the notice of appeal . . . must be filed with the district clerk within 30 days after the judgment or order appealed from is entered." FED. R. APP. P. 4(a)(1)(A). Futernick's

notice of appeal was filed within thirty days of entry of the district court's August 17 and September 1 post-judgment orders; it is therefore timely with regard to those orders. The question is therefore whether Futernick's appeal of the April 14 and May 6 judgments is timely. This, in turn, depends upon whether the May 6 judgment was final for purposes of appeal.

Pursuant to 28 U.S.C. § 1291, we "have jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. The Township argues that the May 6 judgment constituted a final decision, so that an appeal of the April 14 and May 6 judgments should have been taken within thirty days of the entry date of the May 6 judgment.[4] Futernick, on the other hand, contends that the district court's retention of jurisdiction in the May 6 judgment rendered it non-final so that an appeal from that judgment would have been beyond our jurisdiction. Instead, Futernick believes that the district court did not issue a final decision until August 17, 1998. In support of this position, Futernick cites the following language from the August 17 post-judgment order: "[A]lthough this case is closed, plaintiff continues to inundate the court with motions." J.A. at 74 (D. Ct. Order 8/17/98). Futernick argues that it was the

---

[4]Pursuant to Federal Rule of Appellate Procedure 4(a)(4)(A), if a party timely files in the district court a motion to alter or amend the judgment under Rule 59 of the Federal Rules of Civil Procedure, the time to file an appeal runs from the entry of the order disposing of that Rule 59 motion. FED. R. APP. P. 4(a)(4)(A). Because Futernick timely filed a motion to amend the district court's April 14 judgment, his thirty-day appeal period began to run on May 12, which was the date on which the district court's May 6 amended judgment was entered. Futernick's appeal of the April 14 judgment was, therefore, premature because it was filed prior to entry of the May 6 judgment. However, Federal Rule of Appellate Procedure 4(a)(4)(B)(i) provides: "If a party files a notice of appeal after the court announces or enters a judgment — but before it disposes of any motion listed in Rule 4(a)(4)(A) [including a Rule 59 motion] — the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered." FED. R. APP. P. 4(a)(4)(B)(i).

August 17 judgment that "closed the case," so that his September 8 appeal of the April and May judgments is timely.

We begin our analysis by noting that a district court has the authority to dismiss pending claims while retaining jurisdiction over the future enforcement of a settlement agreement. In *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375 (1994), the Supreme Court held that in order to have jurisdiction to enforce a settlement agreement reached in a dismissed action, the district court must make the parties' obligation to comply with the terms of the settlement agreement "part of the order of dismissal — either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Id.* at 381; *see also Waste Management of Ohio, Inc. v. City of Dayton*, 132 F.3d 1142, 1144-45 (6th Cir. 1997) (citing *Kokkonen* for the proposition that a district court's retention of jurisdiction over a case resulting in the entry of a consent decree "clearly provides the district court with continued ancillary jurisdiction over the terms and conditions of the Settlement Agreement and Consent Decree").

We have not previously had occasion to address the question whether a district court's retention of jurisdiction to enforce the terms of a settlement agreement renders an otherwise final judgment non-final. Today we answer that question in the negative. In its April 14 judgment, the district court held that Sumpter Township had not breached its obligations under the settlement agreement and dismissed Futernick's complaint. Although the May 6 judgment reserved jurisdiction so that the district court could monitor the Township's financial position and respond to any changes, the judgment resolved all issues on the merits and effectively ended the litigation. *See Catlin v. United States*, 324 U.S. 229, 233 (1945) ("A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."); *cf. In re VMS Sec. Litig.*, 103 F.3d 1317, 1322 (7th Cir. 1996) (explaining that the *Kokkonen* Court "recognized that a district court's explicit