*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2001 FED App. 0397P (6th Cir.)
File Name: 01a0397p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

RE/MAX INTERNATIONAL,
INC., et al.,
        *Plaintiffs-Appellees,*

RE/MAX NORTHEAST OHIO
LIMITED PARTNERSHIP, et al.,
        *Intervenors-Appellees,*

                v.

REALTY ONE, INC.,
        *Defendant-Appellant,*

SMYTHE, CRAMER COMPANY,
        *Defendant.*

No. 00-4235

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 94-00062—James S. Gwin, District Judge.

Argued: July 31, 2001

Decided and Filed: November 9, 2001

Before:  CLAY, GILMAN and WALLACE, Circuit
                    Judges.[*]

————————

**COUNSEL**

**ARGUED:**    Thomas O. Gorman, PORTER, WRIGHT,
MORRIS & ARTHUR, Washington, D.C., for Appellant.
Daniel H. Bromberg, JONES, DAY, REAVIS & POGUE,
Washington, D.C., for Appellees.  **ON BRIEF:**  Thomas O.
Gorman, PORTER, WRIGHT, MORRIS & ARTHUR,
Washington, D.C., Hugh E. McKay, Gina L. Schaecher,
PORTER, WRIGHT, MORRIS & ARTHUR, Cleveland,
Ohio, for Appellant.  Daniel H. Bromberg, JONES, DAY,
REAVIS & POGUE, Washington, D.C., Mark J. Andreini,
JONES, DAY, REAVIS & POGUE, Cleveland, Ohio,
Edward W. Cochran, COCHRAN & COCHRAN, Shaker
Heights, Ohio, for Appellees.

CLAY, J., delivered the opinion of the court, in which
GILMAN, J., joined.  WALLACE, J. (pp. 30-33), delivered
a separate dissenting opinion.

————————

**OPINION**

————————

CLAY, Circuit Judge.    Defendant, Realty One, Inc.
("Realty One"), appeals the district court's summary
enforcement of a settlement agreement in this antitrust action
instituted by rival northeast Ohio real estate brokerage firm
RE/MAX International, Inc ("RE/MAX").  After the parties
reached a settlement agreement, the district court dismissed
the case with prejudice without incorporating the terms of the

---

[*]The Honorable J. Clifford Wallace, Circuit Judge of the United
States Court of Appeals for the Ninth Circuit, sitting by designation.

agreement into its order or explicitly stating that it was retaining jurisdiction to enforce those terms. On appeal, Realty One challenges the district court's jurisdiction to enforce the settlement agreement. Realty One also contends that even assuming the district court had jurisdiction to enforce the settlement agreement, it abused its discretion by not limiting its order to the terms in the transcript of the settlement proceedings. For the reasons that follow, we **AFFIRM** the district court's judgment.

## BACKGROUND

### A. Initial Proceedings

RE/MAX is a franchisor of a real-estate brokerage system which it sells to franchisees across the nation, including northeast Ohio. Intervenor RE/MAX Northeast Ohio Limited Partnership is the RE/MAX subfranchisor for the northeast Ohio region, which consists of Cleveland and the surrounding area. Defendants Realty One and Smythe, Cramer Company ("Smythe, Cramer") are the largest real estate brokerage companies in northeast Ohio in terms of market share. RE/MAX filed suit against Realty One and Smythe, Cramer in the United States District Court for the Northern District of Ohio, alleging that their practice of paying brokers associated with RE/MAX's franchisees lower commissions on split commission transactions violated the Sherman Antitrust Act and analogous state laws. This practice was known as an "adverse split" and was allegedly designed to drive RE/MAX out of business in northern Ohio by deterring its agents from doing business there.[1] The case was initially assigned to

---

[1] The standard practice in the real-estate industry is that commissions are split equally when one broker brings the seller and another broker brings the buyer to a transaction. However, beginning in 1987, Realty One and Smythe, Cramer began notifying RE/MAX brokerages that there would be an adverse split of 70/30 or 75/25, in favor of the defendants, whenever a RE/MAX agent was on the other side of the table from a Realty One or Smythe, Cramer agent.

District Judge David Dowd, who granted Defendants' motions for summary judgment as to some of RE/MAX's claims. *See RE/MAX Int'l Inc. v. Realty One, Inc.*, 924 F. Supp. 1474 (N.D. Ohio 1996). RE/MAX appealed and Realty One cross-appealed. We reversed in part and remanded for further proceedings. *See RE/MAX Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995 (6th Cir. 1999).

The case proceeded to trial on April 10, 2000. Judge Dowd bifurcated the trial. After the presentation of the evidence, Judge Dowd instructed the jury to first decide whether Defendants had entered an agreement to issue adverse splits, which was an essential element of RE/MAX's federal antitrust claim. Following deliberations, the jury returned a verdict finding that Realty One and Smythe, Cramer had illegally agreed to restrain trade. Judge Dowd then instructed the jury to consider additional elements of RE/MAX's claims. During deliberations on these issues, the jurors posed a question that suggested they had misunderstood Judge Dowd's instructions regarding their earlier deliberations. Finding that the earlier misunderstanding could not be corrected, Judge Dowd declared a mistrial on June 26, 2000. On that same day, the case was transferred to District Judge James Gwin's docket and a new trial was scheduled for August 7, 2000. Settlement negotiations commenced shortly thereafter.

## B. Settlement Negotiations

On June 29, 2000, Judge Gwin appointed Judge Dowd to mediate settlement discussions with the parties. After Judge Dowd's efforts to mediate the dispute proved unsuccessful, Judge Gwin conducted mediation sessions with the parties on July 11, 12, and 13, 2000. The settlement discussions focused on two areas – a multi-million dollar monetary settlement and limitations regarding future commission-splitting and related matters. After many hours of negotiations, the parties significantly narrowed their gap with regard to a monetary settlement. The parties then shifted their focus to the issues

intent different from the plain language of the order when there is no evidence of that intent contemporaneous to the dismissal order. It may be (although I have considerable doubt) that a look beyond the language of the dismissal order to the assumed district judge's intent would be appropriate if the dismissal order were ambiguous and if there was strong circumstantial evidence at the time of the order that a district judge did, indeed, have a certain intent. But such is not the case here. The dismissal order's language is unambiguous and there is no such circumstantial evidence. To the extent the cases of our sister circuits cited by the majority are inconsistent with this view, I would disregard them.

Federal jurisdiction is a precise doctrine. It does not exist here. I would rely upon the reasoning in *Kokkonen* and our own case law and hold that the district court did not have jurisdiction to enforce the settlement agreement. RE/MAX should have brought a separate claim in state court.

settlement agreement–incorporation of the settlement agreement's terms in the dismissal order–and not the first basis: the inclusion of a "provision 'retaining jurisdiction' over the settlement agreement" in the dismissal order. 511 U.S. at 381.

I do not see, and the majority does not explain, why this distinction is meaningful. We have construed ancillary jurisdiction under *Kokkonen* narrowly because, as I stated, federal courts are courts of limited jurisdiction. *McAlpin* 229 F.3d at 501 (quoting *Kokkonen*, 511 U.S. at 378). This reasoning applies with equal force regardless of whether the district court incorporates the settlement agreement in the order of dismissal or includes a provision in the dismissal order reserving jurisdiction. If the majority opinion has not created a conflict among holdings in this circuit, it has created a conflict in the reasoning of its opinions.

Moreover, the holding in one of our earlier decisions is especially relevant to this case. In *McAlpin*, we outlined the contours of the second basis for a district court's ancillary jurisdiction to enforce a settlement agreement. We held that a "district court's incorporation in its dismissal order of only *one term* of the Settlement Agreement . . . is insufficient to confer jurisdiction over the *entire* agreement." 229 F.3d at 502 (emphasis added). It is true that in this case we are addressing the first basis for ancillary jurisdiction under *Kokkonen* and not the second. Yet we are really deciding the same issue: whether a partial reservation of jurisdiction over the enforcement of a settlement agreement really acts as a complete reservation. In its reliance upon a narrow distinction, the majority has eclipsed our ruling in *McAlpin* and created an unnecessary conflict in our rulings.

The majority relies upon cases from the Fifth and Seventh Circuits when it argues that a district judge need not employ formulaic language in a dismissal order to retain jurisdiction to enforce a settlement agreement. I agree. But the majority goes well beyond this. It seeks to divine the district court's

associated with their future commission-splitting relationship. On July 13, 2000, RE/MAX and Smythe, Cramer reached a comprehensive settlement agreement. Judge Gwin asked RE/MAX and Smythe, Cramer to state the general terms of their agreement on the record. The parties did so, and stated their understanding, confirmed by the court on the record, that they would complete a written settlement agreement within forty-five days.

At the time the RE/MAX-Smythe, Cramer settlement was reached, Realty One had refused to settle with RE/MAX and indicated that it was prepared to go to trial.[2] In particular,

---

[2]The district court noted its belief as to why Realty One failed to settle earlier:

Within itself, Defendant Realty One appeared to have different interests. These different interests impaired Realty One's willingness to settle.

After summary judgment had been given but before the Sixth Circuit had reversed Judge Dowd's grant of summary judgment, the former owners of Realty One sold their interest in Realty One to Insignia Financial Group, Inc. As part of their sales agreement for Realty One, the former owners agreed to indemnify Realty One for expenses and any judgment associated with this case. After the Sixth Circuit reversed the grant of summary judgment, these former owners became contractually obligated to defend and indemnify Realty One for expenses and any judgment in this case. Because of this contractual obligation, these former owners have already indemnified many millions of dollars of expenses and fees including expenses and fees generated in the first trial that had lasted more than ten weeks.

In seeking to settle Plaintiff RE/MAX's claims against Defendant Realty One, the former owners were able to reach an agreement in principal [sic] for financial payments sufficient to satisfy Plaintiff RE/MAX. As to such financial payments on behalf Realty One, Insignia Financial Group, Inc. refused to make any contribution. Insignia Financial Group refused contribution even though some argument existed that the former owners' duty to indemnify and defend only extended to claims

Realty One would not agree to the same limitations upon future conduct to which Smythe, Cramer had agreed. However, as RE/MAX and Smythe, Cramer confirmed their agreement on the record, Realty One's counsel unexpectedly stated that he desired a settlement on the same terms as Smythe, Cramer, except that Realty One would pay nearly twice as much in the settlement.[3]  The next day, the district

---

arising during their tenure, not to claims or damages arising during Insignia's ownership.

Although the former owners of Defendant Realty One offered sufficient monies to settle Plaintiff RE/MAX's claim, the current management of Realty One refused to agree to the same limitations on conduct agreed to by Defendant Smythe Cramer. Of course, Smythe Cramer was paying its own expenses and would be risking its own assets if it proceeded to trial.  In contrast, the current owner of Realty One, Insignia Financial Group, Inc. seemed willing to spend the former owner's monies on expenses and risk the former owner's assets to respond to any potential judgment.

(J.A. at 199 n.3.)

[3]As the proceedings continued, Realty One's Counsel, Thomas Gorman, suddenly decided to settle the matter:

THE COURT:    I look at my calender, as against Realty One we are going to start it [the jury trial] on [August 7, 2000].

MR. GORMAN:  As to Realty One, we are in agreement to the financial terms we discussed earlier, same terms to the financial arrangement we discussed earlier.  I don't know the number.

MR. QUINN:    So you are agreeing now to settle?

MR. GORMAN:  Yes.

MR. QUINN:    Same terms?

MR. GORMAN:  Same terms.

---

dismissal contains "some sort of indication that the court has retained jurisdiction."  Thus, the majority appears to argue that a partial reservation of jurisdiction by the district court in its dismissal order really operates as a total reservation of jurisdiction. For example, apparently the majority would hold that a district court's reservation of jurisdiction in a dismissal order over a settlement agreement for ninety days is actually a reservation of jurisdiction for an indefinite period of time or that a district court's reservation of jurisdiction in a dismissal order over one provision in a settlement agreement is really a reservation of jurisdiction over the whole agreement.  In other words, the district court's dismissal order in this case does not mean what it clearly says but, instead, means what this court thinks it should have said.

I cannot accept this approach, nor is it consistent with Supreme Court precedent.  The Court, reminding us that federal courts are courts of limited jurisdiction, held in *Kokkonen* that there is a presumption against a determination of federal jurisdiction and that federal court jurisdiction should "not be expanded by judicial decree." 511 U.S. at 377. It further held that, while a district court may reserve jurisdiction to enforce a settlement agreement, it must do so in its dismissal order.  *Id.* at 381.  The majority opinion is contrary to the Supreme Court's ruling in *Kokkonen* because it disregards the presumption against federal jurisdiction and expands the district court's jurisdiction to enforce the settlement agreement beyond the plain meaning of the dismissal order.

The majority's approach is also inconsistent with our own precedent.  In *McAlpin v. Lexington Auto Truck Stop, Inc.*, 229 F.3d 491, 502 (6th Cir. 2000), we held, citing our earlier decision in *Caudill v. North American Media Corp.*, 200 F.3d 914 (6th Cir. 2000), that we had "joined other circuits in strictly applying the holding in *Kokkonen*."  The majority argues that our previous rulings in *McAlpin* and *Caudill* are not binding because they address the scope of *Kokkonen's* second basis for a court's ancillary jurisdiction to enforce a

---

**DISSENT**

---

WALLACE, Circuit Judge, dissenting. Because I conclude that the district court did not retain jurisdiction to enforce the settlement agreement, I dissent. The appeal should be dismissed.

To retain jurisdiction to enforce a settlement agreement, a district court must either include a "separate provision [in the order of dismissal] (such as a provision 'retaining jurisdiction' over the settlement agreement) or . . . incorporat[e] the terms of the settlement agreement in the [dismissal] order." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994). In this case, the majority argues that the district court had jurisdiction to enforce the settlement agreement because it included a provision in its order of dismissal "'retaining jurisdiction' over the settlement agreement." *Id.*

The order of dismissal states:

IT IS ORDERED that the docket be marked, "settled and dismissed with prejudice."

FURTHER, [a]ny subsequent order setting forth different terms and conditions relative to the settlement and dismissal of the within action shall supersede the within order.

By its plain meaning, the order gives the court the authority to *alter* the terms of the settlement agreement not the authority to *enforce* it. If the court wanted to retain jurisdiction to *enforce* the agreement, it could easily have so stated in the order. This appears clear on the face of the order.

But to the majority, a court may exercise ancillary jurisdiction over a settlement agreement if its order of

court entered an order dismissing the action with prejudice pursuant to Federal Rule of Civil Procedure Rule 41(a)(2).

### C. Post-Settlement Activities

In the days that followed, Realty One issued a press release indicating that the "[f]inal details of the settlement . . . [were] being conducted by attorneys for the various parties." (J.A. at 1025.) Realty One also circulated a newsletter to its employees which stated "[Realty One has] reached an agreement, in principle, to settle our long-running lawsuit with RE/MAX. Though the details are still being finalized, the definitive agreement is expected by the end of August." (J.A. at 1025.) Over the course of the next month and a half, the parties engaged in continued talks, but failed to prepare a draft of the final agreement.

First, RE/MAX sent a draft of a written agreement to Realty One on July 25, 2000. Realty One did not respond to

---

| | |
|---|---|
| MR. QUINN: | 10 million – No, that's the total. $6,666,666. |
| MR. GORMAN: | $6,666,666 is for Realty One. |
| THE COURT: | Just to be clear, under the same terms, Mr. Gorman, with the exception being that Realty One would pay the sum of $6,666,666. |
| MR. GORMAN: | Yes, your Honor, Realty One would pay that sum coming from, as mentioned earlier, the two Avenis, Joe Aveni and Vince Aveni and Jim Miller [the former owners] on behalf of Realty One. And we adopt the same terms and *will draft the papers in the same time period.* |

(J.A. at 1758-59 (emphasis added).) The district court noted that "[w]ith its change of face and speedy retreat from its professed willingness to allow a jury to decide its liability, Defendant Realty One agreed to pay much more than the amount agreed upon by Defendant Smythe Cramer." (J.A. at 199-200.)

RE/MAX's draft for over three weeks.  On August 17, 2000, Realty One informed RE/MAX that it was "not necessary to prepare any additional documentation concerning the settlement" because "the transcript dictated by Judge Gwin and agreed to by counsel and the parties in court on July 13, 2000, is the complete settlement of the parties."  (J.A. at 1810).  Realty One also claimed that RE/MAX's proposed draft contained "additional terms and provisions" not included in the July 13, 2000 settlement.  Yet, Realty One failed to identify the allegedly different terms despite repeated requests to do so.

On August 24, Realty One's counsel sent a letter to RE/MAX's counsel which stated,

> The July 13 agreement does not require any additional written agreement (except the . . . [written] releases). However, as I indicated in our [August 17th] conversation, if plaintiffs believe that it may be useful to incorporate the terms of the agreement as dictated by Judge Gwin in a separate document we are willing to discuss preparing such a document.

(J.A. at 1812.)

RE/MAX responded the next day by again asking Realty One to identify the specific terms it found objectionable by providing a "black-lined" verison of the agreement, which Realty One failed to do.  Instead, on August 28, the deadline for preparing a written agreement imposed by the district court, Realty One's counsel again wrote RE/MAX's counsel to reiterate his view of the terms of the settlement agreement:

> [T]here is no need for any additional agreements as I have repeatedly stated to you.  Your view that the July 13 agreement requires that the parties write an additional settlement agreement is not supported by the transcript. In dictating the terms of the agreement the court did not specifically state that the parties would negotiate and execute an additional agreement.  Rather, the references

judgment.  *Clinton St. Greater Bethlehem Church v. City of Detroit*, 484 F.2d 185, 189 (6th Cir. 1973).  Summary enforcement of a settlement agreement for which there is no dispute as to the terms of the agreement is the only appropriate judicial response, absent proof of fraud or duress. *See, e.g., Aro Corp.*, 531 F.2d at 1372; *Kukla,* 483 F.2d at 621; *cf. Dillow v. Ashland*, No. 97-6108, 1999 WL 685941, at \*\*1-\*\*2 (6th Cir. Aug. 24, 1999) (unpublished) (holding that the district court did not abuse its discretion in enforcing a settlement agreement where the plaintiff agreed on the record to the same material terms enforced by the district court).  As our discussion reflects, the material terms are the same as those agreed to on July 13, 2000.  Realty One has failed to point to any material differences that would warrant a finding to the contrary.  We therefore hold that the district court's enforcement order was not an abuse of its discretion.

## CONCLUSION

For the foregoing reasons, the district court properly retained and exercised jurisdiction over the settlement agreement, and did not abuse its discretion in enforcing the agreement.  The district court's judgment is therefore **AFFIRMED.**

no restriction applying only to current RE/MAX agents. Furthermore, the settlement talks focused in large part upon prospective business arrangements. Limiting the order only to current agents would defeat the clear intent of the parties in agreeing to settle by rendering the agreement impotent.

### Dispute Resolution Procedure

Finally, Realty One attacks the detailed "Dispute Resolution Procedures" incorporated into the settlement order. However, it fails to object to any of the specific provisions in that dispute procedure. Instead, Realty One merely makes the blanket statement that it only agreed that an arbitrator would resolve factual disputes concerning the issuance of an adverse split by Realty One to RE/MAX. Yet, the record reveals a more detailed arbitration agreement. The district court noted on the record that

> [t]he party and agency, RE/MAX agency, as against whom the adverse split was being imposed would have a right to contest that before a disinterested arbitrator to be chosen by the parties. And the parties would both mutually agree to bear the cost of that arbitration, and both would commit to facilitating that arbitration.
>
> . . .
>
> It's further the agreement of the parties that this right to arbitrate would continue for five years, or for such period of time at which RE/MAX International and its agents reached . . . 20 percent [of the market share] in the . . . North Eastern Ohio area, whichever came first.

(J.A. at 1755-56.). Realty One has not indicated how this agreement is materially different from the mandates of the district court's order and its challenge to the dispute resolution procedures is not well-taken.

Once concluded, a settlement agreement is as binding, conclusive, and final as if it had been incorporated into a

---

to the preparation of papers, and the forty five day designation for doing so, refers to the preparation of the letters to withdraw the *special notices* and the releases plaintiffs are to furnish defendants."

(J.A. at 1816 (emphasis added).) Realty One further indicated that it was willing to execute a memorial agreement "which contains the terms of the July 13th agreement (an act which is clearly unnecessary in our view)," but was unwilling to execute a document that significantly varied from that agreement. (J.A. at 1816.) However, Realty One did not prepare or forward any draft at that time. That same day, Realty One tendered a payment in the amount of $3,666,666 to RE/MAX; however, RE/MAX did not accept the payment. In addition, Realty One sent a letter to existing RE/MAX franchisees withdrawing "any and all *special notices*" previously issued by Realty One. (J.A. at 1819 (emphasis added).) RE/MAX's counsel expressed his frustration with Realty One in a letter later the same day:

> We continue to have a huge disagreement in what the Court contemplated by the dictated terms of the July 13th transcript.
>
> . . .
>
> Frankly, in thirty years of practice I have never settled a case where there was not some type of a settlement agreement reached. I have always dictated the rough settlement into the record so that there is no misunderstanding as to the terms of the settlement agreement, but I've always understood those terms would have to be reduced to writing so that there is no misunderstanding in the future and so that the parties can avoid the potential for future litigation.
>
> Also, you indicate that you want us to furnish you with the appropriate releases. Once again, I remind you that the releases were contained in the proposed settlement agreement that was sent to you over a month ago. To

date, we have never heard one word indicating what is objectionable within that agreement other than the fact that Realty One continues to indicate that the agreement contains terms which are not in the July 13th agreement. Specifically, I continue to ask you to tell us what terms you are referring to.

Finally, you ask whether or not we still wanted you to "red-line" the agreement to eliminate the terms which have been "added" to the July 13th agreement. Yes, we have been asking Realty One to do this for a month. It was not until last week that I learned that Realty One was insistent on not signing a formal settlement agreement.

. . .

[W]e have no alternative but to request a conference with Judge Gwin.

(J.A. at 1822.)

RE/MAX requested a status conference once it became clear that the district court's deadline for drafting a final agreement would not be met. In response, Realty One identified some of the terms it considered to be unwarranted or outside the contemplation of the parties. Two of Realty One's specific concerns were security promises the RE/MAX draft imposed on Realty One's parent entity and former owners as well as the requirement of quarterly payments with compounded interest. Significantly, neither of these provision was included in the district court's order which is the subject of the instant appeal. On Friday, September 1, 2000, Judge Gwin conducted an off-the-record conference call with the parties during which he instructed them to continue negotiating over the Labor Day weekend. He further instructed that a motion to enforce should be filed by 4:00 p.m. on the Tuesday after Labor Day if the parties had not reached an agreement by that time. Later on the same day, RE/MAX sent a letter to Realty One accommodating some of its stated objections and asking whether Realty One had

did not restrict this area by reference to any particular MLS. As we have explained, Realty One is also bound by this agreement. It is therefore plausible for the district court to have included the entire Northern District of Ohio, which is the area in which Realty One was allegedly engaged in anti-competitive business practices that inhibited RE/MAX's operations. The full remedy negotiated by the parties contemplated including this entire area.

In addition, Realty One's challenge to the inclusion of three listing service areas, NORMLS, AAMLS, and the Centralized Real Estate Information Service ("CIRS"), is immaterial. As RE/MAX notes, AAMLS no longer exists, and has since been replaced by CIRS. Realty One does not even begin to explain the materiality of this difference. Realty One also challenges the application of the agreement to future RE/MAX brokers, but again fails to articulate why this was in error.[19] The district court's definition comports with the notion that Realty One adopted Smythe, Cramer's agreement to terminate its allegedly illegal business practices as to "all RE/MAX principals and agents." (J.A. at 1755.) The record contains

---

[19]The district it court's order defines "RE/MAX Brokers" in the following manner:

"RE/MAX Broker" shall mean any residential real estate brokerage firm (i) operating, at present or in the future, under a franchise agreement with RE/MAX International or a regional subfranchisor of RE/MAX International (ii) in the Northeast Ohio area. Without limiting this definition, the Franchisee Plaintiffs are included within the scope of the term "RE/MAX Broker" for the periods during which they operated or operate under their respective franchise agreements. The term "RE/MAX Broker," as used herein, shall not include any Franchisee Plaintiff or other residential real estate brokerage firm that has a court action (other than the Actions and court actions relating to property-specific or transaction-specific matters involving a buyer or seller client) now pending against Defendant Realty One.

(J.A. at 206.)

commissions than Realty One agents. However, Realty One provides no support for this restriction. At the July settlement conference, Smythe, Cramer agreed that in addition to withdrawing all adverse splits then in effect, it would also covenant not to "impose any adverse splits *based upon the business model used by plaintiff RE/MAX or its agents*, and would do so only for reasons consistent with the imposition of adverse splits among other real estate agencies in the [North Eastern Ohio] area." (J.A. at 1756 (emphasis added).) When Realty One agreed to the same terms as Smythe, Cramer, it agreed to this provision as well. In addition, the parties' stipulations from early in the litigation imply a broader definition that Realty One now advocates.[18] We therefore find no error in the district court's definition of this term.

### *"North Eastern Ohio", "MLS" & "RE/MAX Brokers"*

Realty One disputes the geographic area in which the agreement will be effective. Specifically, it claims that "Northeastern Ohio", or "Northeast Ohio", should be limited to the thirteen counties represented by the local real estate industry's "multiple listing services" ("MLS") – namely, the Northern Ohio Regional Multiple Listing Service ("NORMLS") and the Akron Area Multiple Listing Service ("AAMLS") – as opposed to the Northern District of Ohio, which includes some twenty counties. The record reveals that, on July 13th, 2000, Smythe, Cramer agreed that the restrictions would apply to "North Eastern Ohio"; the parties

---

[18]The first stipulation provides:

The distinguishing characteristics of the RE/MAX system include, among other things, distinctive sales and promotional materials, centralized advertising, promotional and referral services, proprietary procedures and a 100% commission concept.

(J.A. at 316.)

additional objections. That evening, Realty One informed RE/MAX that it had "difficulties" with that draft, but failed to specify those problems.

On the evening of Monday, September 4, 2000, Realty One sent RE/MAX a list of nearly two dozen of its concerns. Realty One also proposed its own draft of the agreement, which had a cover letter attached reading, in part, "[W]e have prepared a draft agreement in accordance with the July 13, 2000 transcript since the provisions in your earlier draft far exceeded the terms agreed to." (J.A. at 1063.) RE/MAX objected to this draft, arguing that it narrowed the meaning of key terms. Ironically, Realty One's proposed agreement, while purporting to be limited to the terms of the July 13th transcript as RE/MAX's agreement had allegedly failed to do, was actually longer than RE/MAX's draft.

On September 5, 2000, RE/MAX filed a motion to enforce the settlement agreement. Realty One opposed this motion on the basis that the district court lacked jurisdiction. Realty One also alleged that it had already satisfied the terms of the July 13th agreement. Neither party requested an evidentiary hearing. Judge Gwin entered an order enforcing the motion on September 14, 2000.

### DISCUSSION

### I. JURISDICTION TO ENFORCE SETTLEMENT AGREEMENT

This court reviews a district court's decision regarding subject matter jurisdiction *de novo. Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 759 (6th Cir. 2000). The party seeking to invoke the subject matter jurisdiction of the district court bears the burden of showing that the matter is properly before that court. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

Realty One contends on appeal that the district court lacked subject matter jurisdiction to enforce the settlement agreement because the language of its order of dismissal was unconditional  We disagree.  The order of dismissal in the case at bar read, in full:

> Pretrial/Settlement conferences were held in the above-captioned matter on July 11, 2000 - July 13, 2000. During said conferences, settlement talks took place. After a diligent effort on all sides, the parties have settled this[.]  Therefore,
>
> IT IS ORDERED that the docket be marked, "settled and dismissed with prejudice".
>
> FURTHER, Any subsequent order setting forth different terms and conditions relative to the settlement and dismissal of the within action shall supersede the within order.

(Order of Dismissal, J.A. at 693.)

In *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994), the Supreme Court considered a district court's attempt to enforce a settlement agreement between parties in a diversity action.  The parties had settled and filed a stipulation of dismissal with prejudice pursuant to Fed. R. Civ. Pro. 41(a)(1)(ii), which the district court judge then signed.[4]  Writing for a unanimous Court, Justice Scalia

---

[4]That rule provides:

> Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of court . . . (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United

---

district court's definition of "special notice letter."[16] Moreover, the record of post-settlement correspondence between the parties shows that Realty One itself used these terms interchangeably.  For example, the letters Realty One submitted to RE/MAX franchisees on August 28, 2000, allegedly in fulfillment of the requirement that it withdraw adverse splits against RE/MAX franchisees, announced that Realty One was "canceling any and all special notices sent . . . regarding the commission payable to your brokerage on the sale by your brokerage of a Realty One listing."  (J.A. at 1819.)  Realty One's challenge is therefore without merit.

### *"RE/MAX Business Model"*

Realty One also contends that the district court's definition of the "RE/MAX business model" is too broad and expansive.[17]  Realty One claims that the definition of this term should be limited to mean the RE/MAX 100% concept, a policy by which RE/MAX agents typically retained larger

---

[16]The district court's order defines "special notice letter" as

> a written notification by defendants to a broker in which a defendant (i) offers to compensate the addressee broker on the sale of a defendant listing by the addressee broker or any of its agents (either as buyer's agent or as subagent) at a level lower than that offered generally by the defendant to other brokers through the listing of the property with an MLS or (ii) declines to co-broke on defendant listings.

(J.A. at 206-07.)

[17]The district court order defined "RE/MAX business model" as follows:

> RE/MAX business model" shall mean the methods of operating and developing a residential real estate brokerage office, as taught and/or promoted by RE/MAX International to new and existing franchisees.

(J.A. at 207.)

Realty One agreed to pay much more than the amount agreed upon by Smythe, Cramer. As we have already discussed, this factual determination was not clearly erroneous. Realty One's attorney stated, and the district court judge verified, that Realty One was agreeing to the same deal that had been dictated into the record during the several minutes prior to Realty One's surprise settlement agreement. The district court's enforcement order prohibits Realty One from issuing "special notice letters" to RE/MAX brokers in the Northern District of Ohio based upon their affiliation with RE/MAX or their use of the RE/MAX business model. Realty One now claims that the terms in the district court's order are different than those to which it assented on July 13, 2000. Specifically, Realty One complains that certain terms are too broad and are the product of subsequent negotiations and deals struck between RE/MAX and Smythe, Cramer. However, Realty One has failed to articulate any material differences between the July 13th agreement and the subsequent order of enforcement. We believe that the parties received the same basic deal to which they had already agreed.

### *"Special Notice Letter"*

Realty One objects to the use of the term "special notice letter" in the district court's order, contending that it never agreed to use this term as a substitute for "adverse split." Realty One claims that use of the term "special notice letter" would significantly alter its obligations and would insulate RE/MAX from fair market competition. Although the settlement agreement as stated provides that Realty One will withdraw all adverse splits and issue them under limited circumstances in the future, the term was left undefined. However, Realty One has not demonstrated how inclusion of the term "special notice," as defined by the district court, yields a materially different agreement. Realty One informed RE/MAX of the adverse splits via special notice letters. The trade usage of the term "adverse split" comports with the

explained that as courts of limited jurisdiction, federal district courts do not possess the inherent power to vindicate their own authority where parties enter into a voluntary agreement resolving their federal lawsuit. *Id.* at 376-77. Instead, "[e]nforcement of the settlement agreement, whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Id.* at 378. However, a district court does have the authority to dismiss pending claims while retaining jurisdiction over the future enforcement of a settlement agreement. *Futernick v. Sumpter Township*, 207 F.3d 305, 310 (6th Cir. 2000). The *Kokkonen* Court noted that such ancillary jurisdiction would have existed if the parties had provided for the court's enforcement of a dismissal-producing settlement agreement through either one of two methods:

> [T]he only order here was that the suit be dismissed, a disposition that is in no way flouted or imperiled by the alleged breach of the settlement agreement. The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal-either by separate provision (*such as a provision "retaining jurisdiction"* over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a breach of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.

*Kokkonen*, 511 U.S. at 381 (emphasis added).

States or of any state an action based on or including the same claim.

FED. R. CIV. P. 41(a)(1)(ii).

We first considered the requirements for satisfying the second *Kokkonen* exception in *Caudill v. N. Am. Media Corp.*, 200 F.3d 914 (6th Cir. 2000).[5]  Following the decisions of the Third and Eighth Circuits on this issue in *In re Phar-Mor, Inc. Securities Litigation*, 172 F.3d 270 (3d Cir. 1999), and *Miener v. Missouri Department of Mental Health*, 62 F.3d 1126 (8th Cir. 1995), we held that "[t]he phrase 'pursuant to the terms of the [s]ettlement' fails to incorporate the terms of the [s]ettlement agreement into the order because '[a] dismissal order's mere reference to the fact of settlement does not incorporate the settlement agreement in the dismissal order.'"  *Caudill*, 200 F.3d at 917 (citations omitted).  In *McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491 (6th Cir. 2000), we similarly held that the mere reference in a dismissal order to a settlement agreement does not incorporate the settlement agreement into the order.[6]

---

[5]In *Caudill*, we were presented with a dismissal order which stated:

In the presence of and with the assistance of counsel, the parties placed a settlement agreement on the record before the Hon. Bernard Friedman on October 1, 1991. Pursuant to the terms of the parties' October 1, 1991 settlement agreement, the Court hereby DISMISSES this case.

IT IS SO ORDERED.

*Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 915 n.1 (6th Cir. 2000).

[6]In *McAlpin*, the stipulation of dismissal provided,

The parties being in agreement and the Court being otherwise sufficiently advised that the parties hereto have settled their disputes, . . . . the Court hereby orders:
  1. That the Complaint filed herein is DISMISSED AS SETTLED WITH PREJUDICE AS TO ALL CLAIMS asserted therein and this action is Ordered stricken from the docket of this Court in its entirety.
  2. That this Court's Order of August 29, 1997, is hereby amended to provide that Count II of the Complaint is Dismissed with Prejudice.

Realty One argued that it never agreed to prepare any written document aside from papers withdrawing its special notice letters informing RE/MAX franchisees of its intent to engage in adverse splits.  The record shows that Realty One stubbornly refused to cooperate.

Realty One now claims that it complied with the terms of the settlement agreement by tendering a payment for over three million dollars and by withdrawing its special notice letters.  However, it did not even make these overtures until August 28, 2000, which was the deadline for memorializing the agreed upon terms--not the deadline for payments or releases from the respective parties.  Although both parties were jointly responsible for memorializing the terms within the prescribed time  period, Realty One was more culpable because its acts that have frustrated the negotiation process, thereby necessitating judicial intervention.  Thus, the district court correctly determined that Realty One breached the settlement agreement.

## C.  Language of the Enforcement Order

The district court determined that Realty One agreed to a settlement on the same terms as to future conduct that RE/MAX had agreed upon with Smythe, Cramer, except that

---

Quinn, agreed:

MR. McKELVEY:    Your Honor, is it implicit  that the attorneys are thus mandated *to complete the written agreement within the 45 day time frame, right?*

THE COURT:    Yes.

MR. McKELVEY:    That's a given.

MR. QUINN:    Sure, that's fine.

(J.A. at 1757-58.)

The existence of a valid agreement is not diminished by the fact that the parties have yet to memorialize the agreement. When parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement. *Brock*, 841 F.2d at 154; *Kukla*, 483 F.2d at 621 (observing that the power of a trial court to enforce a settlement agreement has been upheld even where the agreement has not been arrived at in the presence of the court nor reduced to writing). Furthermore, the objective acts of the parties reflect that an agreement had been reached. In the first few days after the settlement was reached, Realty One communicated its belief that an agreement had been reached in a newsletter to its employees. In addition, at various points in the post-settlement talks, RE/MAX attempted to consummate the settlement by preparing a written document. Realty One also began performance of its obligations under the agreement by tendering a payment of over three million dollars and withdrawing its adverse split letters. Under Ohio law, these expressions of assent are generally sufficient to show a meeting of the minds. *See Nilavar v. Osborn*, 711 N.E.2d 726, 733 (Ohio Ct. App. 1998).

## B. Breach By Realty One

The district court noted in its order that Realty One had breached the agreement by failing to negotiate in good faith and agree to final terms. According to the plain language of the dialogue from July 13, 2000, Realty One adopted Smythe, Cramer's obligation to prepare a memorialized written expression of the settlement terms as well as to "handle the details" of the agreement within forty-five days.[15]   Yet,

---

[15] As RE/MAX and Smythe, Cramer had nearly completed recording the terms of their agreement, the RE/MAX's Chairman, Mr. Liniger, stated, "This becomes effective today *and we would just handle the details?*" (J.A. at 1756.) Shortly thereafter, Smythe, Cramer's Chairman, Lucius McKelvey, confirmed that documentation would be prepared to memorialize the parties agreement and RE/MAX's counsel, Terrence

---

Inasmuch as the district court's order of dismissal in the instant case merely made reference to "settlement talks" and failed to incorporate the terms of the settlement agreement, it is clear that the second *Kokkonen* exception has not been satisfied. However, in considering RE/MAX's motion to enforce, the district court found that through the language of its order, it had retained jurisdiction to enforce matters concerning the settlement agreement in satisfaction of the first *Kokkonen* exception.

Realty One argues that under this Court's opinion in *McAlpin,* the district court's language was not sufficiently explicit. Realty One points to this Court's statement in *McAlpin* that under *Kokkonen* "a federal district court lacks jurisdiction to enforce a settlement agreement terminating litigation unless the court '*expressly retained jurisdiction* to enforce the settlement agreement' or 'incorporated the terms of the settlement into the dismissal order.'" *McAlpin*, 229 F.3d at 501 (emphasis added). In *McAlpin*, we noted that this Court has "joined other circuits in strictly applying *Kokkonen's* relatively narrow interpretation of a district court's ancillary jurisdiction to enforce settlement agreements terminating litigation." *Id.* at 502. However, we did not have occasion to construe the first *Kokkonen* exception in that case. Instead, the holding in *McAlpin* was limited to holding that "the district court's incorporation in its dismissal order of only a single term of the parties' 20-page settlement agreement is insufficient to support the court's exercise of ancillary jurisdiction over the entire agreement." *Id.* Insofar

---

3. That the Court appointed Receiver, Morris Gahafer, is hereby ordered to turn over to the Defendants any and all copies of the Receiver's First Interim Report as well as any drafts thereof or any other documents which he may have obtained or generated as a result of the performance of his duties as Receiver herein.

*McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 497 (6th Cir. 2000).

as the first *Kokkonen* exception was not the basis for our decision in *McAlpin*, the language to which Realty One points is dicta and therefore not binding on this Court.[7]

Moreover, we do not believe that *Kokkonen* requires the interpretation mentioned in *McAlpin*. While *McAlpin* purports to quote the words of Justice Scalia, the phrase "expressly retained jurisdiction" does not appear in the Supreme Court's decision in *Kokkonen*. Instead, *Kokkonen* only requires a reasonable indication that the court has retained jurisdiction, "*such as* a provision 'retaining jurisdiction' over the settlement agreement." *Kokkonen*, 511 U.S. at 381 (emphasis added). In this way, the Court intended to avoid subjective interpretations of what a district court intended to accomplish through its order of dismissal – a practice employed by appellate courts in cases such as *McCall-Bey v. Franzen*, 777 F.2d 1178 (7th Cir. 1985).[8]

---

[7] The same may be said of our decision in *Caudill,* which was decided a few months earlier. *See Caudill*, 200 F.3d at 915; *see also In re Phar-Mor, Inc. Secs. Litig.*, 172 F.3d 270, 273 (3d Cir. 1999) (holding that no jurisdiction existed after an order dismissed the case with prejudice "*pursuant to the terms of the Settlement . . .*"). The dismissal orders in those cases contained no language which could be construed as retaining jurisdiction.

[8] In *McCall*, the court reasoned:

The judge would not have been likely to grant such a petition in a case over which he had no jurisdiction because he had dismissed the case outright months earlier. His response is therefore some evidence that he had indeed intended to make his dismissal, though outright in form, conditional in substance; that in referring to the as yet unfiled stipulation in his order of dismissal, the judge, perhaps fully aware of the tenor and progress of the settlement negotiations and the provision in the settlement agreement for petitioning the court to enforce it, intended to honor that provision, and to this end decided to retain jurisdiction of the litigation for the very purpose of responding to the type of petition that the plaintiff filed. It would of course have been much better if the judge had made all this

factual finding for an abuse of discretion. *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 418 (6th Cir. 2000). We will only find an abuse of discretion only when left with the "definite and firm conviction that the court . . . committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors" or where it "improperly applies the law or uses an erroneous legal standard." *Huey v. Stine*, 230 F.3d 226, 228 (6th Cir. 2000) (citations and internal quotation marks omitted).

### A. Validity of Settlement Agreement

Before enforcing a settlement, a district court must conclude that agreement has been reached on all material terms. *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988). Ordinarily, an evidentiary hearing is required where facts material to an agreement are disputed. *Kukla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 622 (6th Cir. 1973); *Aro Corp.*, 531 F.2d at 1372. However, no evidentiary hearing is required where an agreement is clear and unambiguous and no issue of fact is present. *Aro Corp.*, 531 F.2d at 1372. Thus, summary enforcement of a settlement agreement has been deemed appropriate where no substantial dispute exists regarding the entry into and terms of an agreement. *Kukla*, 483 F.2d at 621; *cf. Therma-Scan*, 217 F.3d at 419 (recognizing that summary proceedings may result in inequities when a dispute exists as to a material term). No evidentiary hearing was held in the instant case because neither party requested one. Indeed, none was required because the record shows that all the essential terms had been agreed upon in open court and all that remained was to sort out the non-material details and put the agreement in writing. Realty One acknowledges that there was a clear and unambiguous agreement, constituting a meeting of the minds on key terms. In addition, Realty One admits that the fact that certain terms, such as "adverse split" and "RE/MAX business model," were left undefined at the July 13, 2000 court session does not undermine the crux of the agreement.

where a district court amended its judgment "to provide for the court's retention of jurisdiction until completion of the parties' obligations under the settlement agreement"); *Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 132 F.3d 1142, 1145 (6th Cir. 1997) (holding that a district court had subject matter jurisdiction to address the state law issues because the consent decree specifically conferred jurisdiction). Simply because a mandate is exceeded is no reason to raise the bar to the same level in every circumstance.[14]

Turning to the language of Judge Gwin's order, we believe that it satisfied the second exception recognized in *Kokkonen*. The order stated that any "subsequent order setting forth different terms and conditions relative to the settlement and dismissal of the within action shall supersede the within order." (J.A. at 693.) Of course, the court may only enter subsequent orders involving the settlement agreement if it has retained jurisdiction. Thus, the "continued role for the court that was contemplated after dismissal" is included in the language of the order itself. *In re Bond*, 254 F.3d at 676-77. We therefore find that this was a "separate provision" retaining jurisdiction in compliance with *Kokkonen* and hold that the district court properly asserted subject matter jurisdiction.

## II. TERMS OF SUMMARY ENFORCEMENT

We now address Realty One's claim that the district court erred by enforcing terms to which Realty One had not agreed. This Court reviews for clear error the district court's factual determination that the parties had agreed to settlement terms; however, we review the district court's decision to grant a motion to enforce the settlement based on its preliminary

---

[14]We are likewise undeterred by the fact that Judge Gwin's subsequent order of enforcement contained the sentence "This Court shall retain continuing jurisdiction to enforce the provisions of this judgment." (J.A. at 213.) After Realty One attacked the court's jurisdiction initially, it could only be expected to take every precaution in the future.

However, while the circular logic used in *McCall-Bey* may not survive *Kokkonen*, the tradition of not requiring the use of specific terminology remains. *See id.* at 1188 (rejecting the notion that "there is any magic form of words that the judge must intone in order to make the retention of jurisdiction effective.").

In post-*Kokkonen* decisions, appellate courts have adhered to this view. For example, in *Bell v. Schexnayder*, 36 F.3d 447, 448 (5th Cir. 1994), the Fifth Circuit held that the district court had properly retained jurisdiction by including language in its dismissal order that gave the parties the right to reopen the judgment if a settlement was not consummated within sixty days.[9] Also, in *Ford v. Reese*, 119 F.3d 560, 561-62 (7th Cir. 1997)[10], the Seventh Circuit borrowed the surviving logic of *McCall-Bey* in holding that it was apparent that the district court intended to retain jurisdiction.[11] The Seventh

---

clearer, but we conclude that the plaintiff has shown--if barely--that the judge did retain jurisdiction of the case.

*McCall-Bey v. Franzen*, 777 F.2d 1178, 1188-89 (7th Cir. 1985).

[9]The *Bell* court explained,

The order states that the court, "having been advised by counsel for the parties that the above action has been settled," was dismissing the case "without prejudice to the right, upon good cause shown within sixty (60) days, to reopen it if settlement is not consummated and seek summary judgment and enforcing the compromise."

*Bell v. Schexnayder*, 36 F.3d 447, 448 (5th Cir. 1994).

[10]The order in *Ford* dismissed the suit "without prejudice to reinstatement in the event that the . . . payments are not made by the defendant . . . ." *Ford v. Reese*, 119 F.3d 560, 561-62 (7th Cir. 1997).

[11]It cannot be said that all of the Seventh Circuit's reasoning in *McCall-Bey* is meaningless in the wake of *Kokkonen*. Indeed, the court recognized in *McCall-Bey* that "[t]here must be a deliberate retention of

Circuit recently employed this logic again in *In re Bond*, 254 F.3d 669 (7th Cir. 2001).

Realty One cites post-*Kokkonen* cases from other circuits that require express language of retention. *See, e.g.*, *Scelsa v. City Univ. of N.Y.*, 76 F.3d 37, 41 (2d Cir. 1996) (holding that under *Kokkonen*, the district court has jurisdiction only if the dismissal order expressly reserved authority to enforce the agreement, or incorporated the agreement into the order); *Hagestad v. Tragessor*, 49 F.3d 1430 (9th Cir. 1995) (holding that although the court clearly intended to retain jurisdiction, an order dismissing the case with prejudice "with leave for good cause shown within ninety (90) days, to have the dismissal set aside and the action reinstated if the settlement is not consummated" failed to meet the *Kokkonen* standard). Needless to say, these decisions are not binding on our Circuit. In addition, we believe these cases are distinguishable. As was true in *Kokkonen*, *McAlpin* and *Caudill*, many of these cases involved stipulations of dismissal prepared by the parties and ratified by the court pursuant to Fed. R. Civ. P. 41(a)(1)(ii). *See, e.g., Scelsa*, 76 F.3d at 39 (finding no jurisdiction where the district court dismissed the action with prejudice after approving an order drafted by the parties pursuant to Rule 41(a)(1)(ii), marking it "SO ORDERED."). Conversely, in the case at bar, the district court dismissed the action with prejudice in a Rule 41(a)(2) order.[12] This distinction is further evidence that

---

jurisdiction, as by issuing an injunction or stating that jurisdiction is retained for a particular purpose. An unconditional dismissal terminates federal jurisdiction except for the limited purpose of reopening and setting aside the judgment of dismissal within the scope allowed by Rule 60(b)." *See McCall-Bey*, 777 F.2d at 1190.

[12]Rule 41(a)(2) provides:

Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions

*McAlpin* and *Caudill* did not settle the issue we now decide. *See Hindsdale v. Farmers Nat'l Bank & Trust*, 823 F.2d 993, 996 (6th Cir. 1987) (finding no jurisdiction where the order of dismissal with prejudice was unconditional, but recognizing the authority of a district court to retain jurisdiction under Fed. R. Civ. P. 41(a)(2)). Furthermore, the language of the orders in many of those cases made only vague references to the settlement agreement, thereby not even implicating the first *Kokkonen* exception that we discuss today.[13]

We also note that this Court has not historically adopted such a narrow construction of a district court's jurisdiction. *See, e.g., Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir. 1976) (holding that federal courts have inherent powers to enforce agreements executed in settlement). The fact that we have previously found jurisdiction in light of express statements is not indicative of a change in course. *See, e.g., Futernick*, 207 F.3d at 309 (finding jurisdiction

---

as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

Fed. R. Civ. P. 41(a)(2).

[13]Similar to the dismissal orders in *McAlpin* and *Caudill*, recounted earlier in this opinion, the language of the dismissal order in *Scelsa* could in no way be construed as expressing an intent to retain jurisdiction. The *Scelsa* dismissal order provided:

It is Hereby Stipulated and Agreed, by and between the undersigned attorneys for the parties, that the above-captioned action is dismissed with prejudice and without costs to any party, except as set forth in the Settlement Agreement among the parties dated January 7, 1994.

*Scelsa v. City Univ. of N.Y.*, 76 F.3d 37, 39-40 (2d Cir. 1996).