KAREN NELSON MOORE, Circuit Judge,
dissenting.
This case asks us to determine whether a 1989 Settlement Agreement is ambiguous. The Settlement Agreement released insurers from coverage as to a battery manufacturing facility in Bloomfield, New Jersey. Cooper Industries argues that the Settlement Agreement unambiguously refers only to the facility that manufactured primary batteries, not to the adjacent facility that manufactured storage batteries. The insurers argue that the Settlement Agreement unambiguously refers to both the primary battery manufacturing operation and storage battery manufacturing operation because they were part of a single facility, not two separate facilities. The district court wrote a well-reasoned opinion concluding that the Settlement Agreement unambiguously refers to a single facility that manufactured both primary and storage batteries. The majority has written a well-reasoned opinion concluding that the Settlement Agreement unambiguously refers to only the primary battery facility, not the separate storage battery manufacturing facility. I conclude that the Settle *494 ment Agreement is ambiguous, and I would vacate the district court’s judgment and remand for an evidentiary hearing.
In its opinion concluding that the Settlement Agreement unambiguously referred to the entire battery manufacturing operation, the district court said:
The first and most obvious problem is that the term the parties used is not the phrase that Cooper wants it to be. The parties referred simply to “Battery Products,” and not to “Battery Products, Inc.” The term is capitalized, but not defined anywhere else in the papers, and so the term must glean meaning from the overall context of its use. Reading into the term the corporate entity limits that Cooper urges is not warranted by the text or context. Second, the most natural referent for the term “Battery Products” is the 1984 notice letter, which is the triggering event for coverage purposes. And at that time the corporate entity “Battery Products, Inc.” did not even exist. ... [T]hird and most important, the overall point of the whole settlement was to prepare a comprehensive identification of insurance exposures, and then divide them by site into released sites or on-notice sites. Reading the Agreement as Cooper urges would disrupt that design by effectively creating a third possibility: namely, a site that everyone knew was contaminated, and that the parties described in 25-year-old language on either the “Settled Site” or “On Notice” site exhibit, but that parties today are now describing in somewhat different words. On this record there is no basis to do so.
R. 400 (Opinion at 13) (Page ID # 2887).
The majority opinion provides a different analysis:
Cooper released its insurance claims for several other “Plant facilities” across the country .... Each facility is named after the entity or division operating it, with names including the “Service Division Facility,” the “Bussman Facility,” and the former “Toastmaster” and “Worthington” facilities. These names show that the contracting parties had a convention for identifying the facilities in the agreement based on the entities that operated them. Under that convention, the Battery Products Plant facility refers to the Primary Battery plant, which Battery Products, Inc. operated, and which does not include the Storage Battery plant, ... Moreover, ... [i]n the Counterclaim, Cooper describes the Battery Products Plant as the property that “McGraw has owned and operated” since 1959. At the time Cooper filed the Counterclaim, the Primary . Battery plant was the only Bloomfield factory that fit that description. Cooper also used lower-case letters to write the phrase “battery products” when describing how the Battery Products Plant “engaged in the manufacture of battery products.” But Cooper capitalized the term when referring to the “Battery Products site.” ... The settlement agreement’s explicit reference to the Counterclaim thus indicates that the agreement was likewise using “Battery Products” as shorthand for Battery Products, Inc.
Maj. Op. at 492.
The central dispute between these two analyses of the Settlement Agreement is the meaning of the term “Battery Products.” In the above excerpt, the district court emphasizes that the term most likely refers to a 1984 letter written before the corporate entity Battery Products, Inc. existed. The district court also emphasizes that defining “Battery Products” to mean the facility eventually owned by Battery Products, Inc., rather than the entire facility that manufactured both primary and *495 storage batteries, would undermine the purpose of the Settlement Agreement, which was “to prepare a comprehensive identification of insurance exposures, and then divide them by site into released sites or on-notice sites.” R, 400 (Opinion at 13) (Page ID #2887). The majority opinion, by contrast, emphasizes that the Settlement Agreement referred to other facilities based on the entities the operated them, and that Battery Products, Inc. operated the battery products manufacturing facility but not the storage battery manufacturing facility. The majority also emphasizes that the capitalization of “Battery Products” indicates that the term is short for Battery Products, Inc., not a general reference to the products manufactured at the facility. Each of these opinions makes a convincing case for the wisdom of its proposed interpretation of the term “Battery Products” in the Settlement Agreement. Neither makes a convincing case that the other interpretation is an impermissible construction of the term.
A contract is unambiguous when it “fairly admits of but one interpretation.” Allstate Ins. Co. v. Goldwater, 163 Mich.App. 646, 415 N.W.2d 2, 4 (1987). This Settlement Agreement “fairly admits of’ two interpretations. Id. Therefore, this Settlement Agreement is ambiguous. When a contract is ambiguous, the district court must hold an evidentiary hearing. See RE/MAX Int’l, Inc. v. Realty One, Inc., 271 F.3d 633, 646 (6th Cir. 2001). Because the Settlement Agreement is ambiguous, the district court abused its discretion by failing to hold an evidentiary hearing.
I concur with the majority’s judgment that the district court properly exercised jurisdiction over the declaratory-judgment action. I disagree with the majority’s view that the contract is unambiguous, and I would remand for an evidentiary hearing. Therefore, I respectfully dissent.