NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0567n.06
Filed: July 7, 2005

No. 04-3406

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ANNALIESA HENLEY,

      Plaintiff-Appellant,

v.

CUYAHOGA COUNTY BOARD OF
MENTAL RETARDATION AND
DEVELOPMENTAL DISABILITIES,

      Defendant-Appellee.

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

Before: BOGGS, Chief Judge; GILMAN, Circuit Judge; and CLELAND,[*] District Judge.

CLELAND, District Judge. Annaliesa Henley appeals a district court's order denying her

motion to reopen her civil rights action and enforcing the terms of a settlement agreement between

the parties. Because she has failed to carry her burden to show that the terms of the settlement were

materially altered, that the settlement contract was invalid based on fraud or mutual mistake, or that

the lower court abused its discretion in enforcing the terms of the parties' settlement agreement, we

AFFIRM the judgment of the district court.

I.

On December 1, 2001, Henley, an instructor with Defendant Cuyahoga County Board of

Mental Retardation and Developmental Disabilities ("the Board"), filed suit against her employer,

_____

[*] Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by
designation.

alleging race discrimination, retaliation, and retaliatory hostile work environment in violation of Title VII of the Civil Rights Act of 1964, a § 1983 claim for violation of her free speech and due process rights, and several state law claims. On March 20, 2002, the parties consented to the exercise of jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.

The Board filed a motion for summary judgment on all claims, which the district court granted in substantial part, but denied as to Henley's race discrimination claims. Thereafter, on December 1, 2003, the magistrate judge mediated a settlement conference. Both sides were represented by counsel during this conference and the magistrate judge directly assisted the parties in negotiating their settlement.

The parties reached a settlement on December 1, 2003, the essential terms of which were put into writing by the court and signed by the parties and their counsel. Neither party, unfortunately, has made this signed document part of the record on appeal, although its absence does not inhibit our analysis, as shall be seen below. The central piece of the parties' settlement was the payment of $15,000.00 to Henley in exchange for her voluntary retirement at her earliest eligibility and the Board's promise to render her eligible for an early retirement incentive program ("ERIP") under the controlling collective bargaining agreement.

Based on the parties' settlement agreement, the district court entered an order of dismissal on December 1, 2003. The dismissal order provides, in relevant part:

> **This action** having been reported to the Court as settled,
> **IT IS HEREBY ORDERED** that plaintiff['s] complaint (and counterclaims, cross-claims, third-party complaints or other pleadings seeking relief, if any) is/are dismissed with prejudice, without prejudice to the right of plaintiff (or any other party seeking affirmative relief) to seek reinstatement within sixty (60) days hereof should the settlement not be concluded. The parties, may if they so desire, submit

2

for this Court's signature a supplemental judgment entry setting forth for purposes of the record such terms and conditions of settlement as they may choose.

Following the settlement conference, the Board's counsel prepared formal settlement documents based on the parties' December 1, 2003 agreement, including a release of all claims, an agreement to resolve claims, a letter regarding Henley's eligibility for the ERIP controlled by a collective bargaining agreement, and a copy of the collective bargaining agreement's specific language relating to the ERIP. The Board's counsel mailed copies of these documents to Henley's counsel on December 19, 2003, along with a cover letter explaining that, pursuant to the parties' agreement, upon receipt of the executed documents and Henley's resignation letter, the Board would forward her a check for $15,000.00. The mailed documents, however, were returned to the Board's counsel as undeliverable, and the Board resent them on January 1, 2004.

Henley objected to certain provisions contained in the settlement documents prepared after the conference, claiming that the terms materially altered the agreement reached on December 1, 2003. On January 13, 2004, within the sixty-day period permitted by the district court's order, Henley, by counsel, filed a one-page motion to reopen the case. In her motion, she informed the court that she found the terms in the Board's settlement documents unacceptable.

Thereafter Henley's counsel filed a motion to withdraw, and the district court held Henley's motion to reopen the case in abeyance, noting that it would not permit Henley to abandon the settlement based on a case of "seller's remorse," nor would it permit the Board to vary the terms of the settlement agreement. The district court refused to reopen the case based on Henley's "amorphous representation that she finds the terms of the settlement documents to be unacceptable."

Instead, the court provided Henley ten days to make a prima facie demonstration that the Board was varying the terms of the settlement agreement.

On January 27, 2004, Henley filed her initial brief in support of her motion to reopen the case. She identified three ways that the Board was allegedly attempting to alter the terms of the settlement: (1) by adding the condition precedent that Henley execute the settlement documents before the Board would have to make payment of the $15,000.00 (Henley claims an absolute right to receive the money within thirty days); (2) by incorporating a provision under Ohio law, *see Hartmann v. Duffey*, 768 N.E.2d 1170 (Ohio 2002), seeking to relieve the Board from paying interest on the settlement proceeds in the event of delay (Henley claims that she never waived her right to recover such interest); and (3) by misrepresenting to Henley the number of employees who could receive benefits under the terms of the ERIP.

On January 29, 2004, Merrie M. Frost filed an appearance on Henley's behalf, and the district court permitted Henley's new counsel to file a supplemental memorandum in support of her motion to reopen the case. In her supplemental memorandum, Henley charged a fourth material alteration by the Board. Henley argued that the confidentiality/non-disparagement clause contained in the formal settlement documents unlawfully restricted her First Amendment rights.

The district court, based on its own recollection of the settlement conference, rejected all four arguments, finding that the documents drafted by the Board reflected the parties' intended settlement agreement and did not materially alter the terms of the parties' settlement agreement.

## II.

Enforcement of a settlement agreement "is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen v. Guardian Life Ins.*

4

*Co. of Am.*, 511 U.S. 375, 378 (1994). It is well established, however, that "a district court does have the authority to dismiss pending claims while retaining jurisdiction over the future enforcement of a settlement agreement." *Re/Max Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 641 (6th Cir. 2001).

In *Re/Max Int'l, Inc.*, we recognized that the *Kokkonen* Court contemplated the potential for a district court to exercise ancillary jurisdiction to enforce a settlement "if the parties had provided for the court's enforcement of a dismissal-producing settlement agreement." *Id.* at 641. A district court may establish its jurisdiction to enforce a settlement in one of two ways: (1) by expressly including a provision retaining jurisdiction in the order of dismissal; or (2) by incorporating the terms of the settlement agreement in the order. *Id.* at 641-42; *Kokkonen*, 511 U.S. at 381. Here, we are satisfied that jurisdiction to enforce the settlement agreement exists because the district court's order of dismissal contained a provision retaining jurisdiction to enforce the settlement agreement. We now turn to the merits of Henley's appeal.

Henley makes three unconvincing arguments on appeal. First, she argues that the district court erred by requiring her to make a prima facie demonstration that the Board had materially altered the terms of the parties' settlement agreement. Henley maintains that, to reopen the case, the district court's order merely required that she show that the settlement was "not concluded." She claims that the district court failed to provide reasonable notice that she would have to prove anything beyond this simple fact to have the court reopen her case. She posits that, by requiring her to make a prima facie case of material alteration in the terms of the settlement, the district court "trampled" her due process rights under the Fourteenth Amendment.

Second, Henley argues that the district court erred in finding that the Board's proposed

5

settlement documents accurately reflected the terms of the parties' agreement. She claims that the settlement documents materially altered the terms of the agreement and that the court's decision enforces an agreement containing terms to which she did not assent.

Third, and finally, she argues that the confidentiality/non-disparagement clause contained in the Board's settlement documents, and found by the district court to be included in the parties' agreement, unlawfully restricts her First Amendment right to speak on matters of public concern. In short, Henley maintains that she did not agree to waive any First Amendment rights to make disparaging remarks about her employer, a public entity.

"It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992) (quoting *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988)). The district court's power to summarily enforce settlements extends to cases where the parties' agreements are not in writing and even to those settlement agreements made off the record, not in the presence of the court. *Bowater N. Am. Corp. v. Murray Mach., Inc.*, 773 F.2d 71, 76-77 (6th Cir. 1985); *Kukla v. Nat'l Distillers Prods., Co.*, 483 F.2d 619, 621 (6th Cir. 1973) ("[T]he power of a trial court to enforce a settlement agreement has been upheld even where the agreement has not been arrived at in the presence of the court nor reduced to writing."). The existence of a valid settlement agreement "is not diminished by the fact that the parties have yet to memorialize the agreement." *Re/Max Int'l, Inc.*, 271 F.3d at 646.

This inherent power derives from the policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation. *Kukla*, 483 F.2d at 621. "Agreements settling litigation are solemn undertakings, invoking a duty upon the involved lawyers, as officers of the

6

court, to make every reasonable effort to see that the agreed terms are fully and timely carried out." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976). As such, courts should uphold settlements whenever equitable and policy considerations allow. *See id.*

To enforce a settlement, a district court must conclude that agreement has been reached on all material terms. *Re/Max Int'l, Inc.*, 271 F.3d at 645-46; *Brock*, 841 F.2d at 154. "The intent of the parties when entering a settlement agreement is an issue of fact to be decided by the district court." *Brown v. County of Genesee*, 872 F.2d 169, 174 (6th Cir. 1989) (citing *Jennings v. Metro. Gov't of Nashville*, 715 F.2d 1111, 1114 (6th Cir. 1983)). Summary enforcement is appropriate "where no substantial dispute exists regarding the entry into and the terms of an agreement." *Re/Max Int'l, Inc.*, 271 F.3d at 646. When making factual findings regarding the material terms of a settlement agreement, the district court is not required to adhere strictly to the requirements of Federal Rule of Civil Procedure 52. *Bowater N. Am. Corp.*, 773 F.2d at 77.

If the parties reached agreement on all material terms, then existing precedent "dictates that only the existence of fraud or mutual mistake can justify reopening an otherwise valid settlement agreement." *Brown*, 872 F.2d at 174. More importantly, once a settlement is reached, it is the party challenging the settlement who bears the burden to show that the settlement contract was invalid based on fraud or mutual mistake. *Id.* (citing *Callen v. Pennsylvania R. Co.,* 332 U.S. 625, 630 (1948)).

## A.

Henley first argues that the district court erred by not reopening the case because the parties' settlement was "not concluded." She claims that the terms of the district court's order dismissing

the case permitted reinstatement and that requiring her to establish a prima facie showing that the Board was materially altering the terms of the settlement denied her due process.

This argument too narrowly targets the district court's statement that either party had the right to seek reinstatement "should the settlement not be concluded." Henley relies on this statement to assert her right, under the dismissal order, to reinstatement *regardless of the reason that the settlement was not concluded*. Such a contorted construction of the district court's order, however, would give either party the unfettered right to reinstate based on a change of heart, essentially rendering illusory the promises made to reach the settlement.

Henley's argument ignores the clear language of the district court's order stating that the case was "settled," her own sworn admission that a settlement agreement was in fact reached, and the language in the district court's order merely extending a right "to seek" reinstatement. When reading the entire order in context, there is no doubt that the lower court determined that the parties had reached a settlement agreement. The district court did not provide the parties with an unconditional right to avoid their settlement contract and reopen the case.

We also find that the district court did not violate Henley's due process rights by failing to detail the law that would support a successful reopening of the case following her decision to reach a voluntary settlement or by requiring Henley to make a prima facie showing that the Board was materially altering the terms of the agreement. Although she may dispute its terms, Henley admits that she reached a settlement agreement with the Board. The law is clear that "[o]ne who attacks a settlement agreement must bear the burden of showing that the contract he made [was] tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted." *Callen*, 332 U.S. at 630.

8

The fundamental elements of procedural due process are notice and an opportunity to be heard. *Yellow Freight Sys., Inc. v. Martin*, 954 F.2d 353, 357 (6th Cir. 1992) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). Here, the lower court provided ample opportunity for Henley to satisfy her burden to avoid enforcement of the settlement agreement under existing law. The district court put Henley on notice that she would have to show that the Board was materially altering the settlement terms, and it provided her with two opportunities to support her motion to reopen the case based on alleged material alterations.

B.

A complete review of the record and the district court's detailed ruling on each term disputed by Henley reveals no basis for this court to conclude that the lower court committed error. Henley has failed to carry her burden to show that *any* material terms of the parties's settlement agreement were altered.

First, the district court held that it was inconceivable that Henley and her attorneys would argue that Henley was entitled to receive payment of the settlement proceeds before executing a release of claims. As the district court stated, "[t]o pay any plaintiff before then would be sheer folly." Henley argues that the lower court erred in not crediting her statement that she believed that she would receive the $15,000.00 in settlement proceeds within thirty days whether she executed the release of claims or not.

We find no error or abuse of discretion in the district court's determination that Henley's execution of a release of her claims was a constructive condition precedent to triggering a duty to pay settlement proceeds. When parties to a bilateral contract neglect to expressly state the order in which their promises will be performed, the court must fill the gap under the doctrine of constructive

9

conditions.  *See* John D. Calamari & Joseph M. Perillo, Contracts §§ 11-17 (3d ed. 1987); Restatement (Second) of Contracts § 234.  The Restatement (Second) of Contracts provides the black letter basics on this point:

> (1) Where all or part of the performances to be exchanged under an exchange of promises can be rendered simultaneously, they are to that extent due simultaneously, unless the language or the circumstances indicate the contrary.
>
> (2) Except to the extent stated in Subsection (1), where the performance of only one party under such an exchange requires a period of time, his performance is due at an earlier time than that of the other party, unless the language or the circumstances indicate the contrary.

Restatement (Second) of Contracts § 234.

Henley has presented no basis for us to conclude that the lower court abused its discretion in imposing a constructive condition or erred in finding that the parties intended that Henley would not be entitled to the settlement proceeds until she executed the release.

Second, the lower court found that the incorporation of a term excluding interest on the settlement proceeds and a reference to *Hartmann v. Duffy*, 768 N.E.2d 1170 (Ohio 2002), in the release language did not represent a material change in the terms of the parties' settlement agreement.  The provision in the release states that Henley "specifically waives any right to interest on the amount of settlement for any delay in payment from December 1, 2003, the date of settlement, until the date of payment, and specifically releases and discharges [the Board] . . . from any claim or demand for interest on the settlement amount to which [Henley] may or may not otherwise be entitled in accordance with [*Hartman*.]"  The lower court ruled that the parties reasonably expected that there would be a thirty-day period for payment.  The court further found that, in the absence of the mailing/delivery glitch occurring in December 2003, the Board's settlement documents would have been in Henley's hands ready for execution, and she would have

10

likely received her settlement proceeds by the end of December 2003. The district court held that the inclusion of the provision limiting interest otherwise recoverable under *Hartmann* was part of the agreement and was intended to protect the Board from paying interest caused by any delay by Henley in executing the settlement. These conclusions are also supported by the record.

Henley's third alleged material alteration by the Board concerns her agreement to retire and the Board's promise to ensure that she was eligible for an early retirement buyout under the ERIP of the collective bargaining agreement. If eligible and selected, Henley claims that she would be entitled to receive an additional approximate $25,000.00 in severance pay. Henley asserts that, during settlement negotiations, the Board assured her that there would be sixteen employees eligible for a buyout under the ERIP in 2005. Henley argues that there are now only twelve. The district court again credited the Board's version of the facts giving rise to the settlement agreement, finding that there was no express promise that 16 employees would be eligible under the ERIP in 2005:

> Next, as signed off by the plaintiff, the proviso pertaining to participation in the ERIP reads "[plaintiff] deemed to have opted to participate in buyout program in effect as of her retirement date, [defendant] to provide [plaintiff's] counsel with letter detailing buyout procedures."
>
> This Court has a very clear memory of the discussions which led up to this aspect of the settlement. [The Board's agent] stated at the conference: that the ERIP was controlled by the collective bargaining agreement; that he believed, but could not be sure, that at the time of plaintiff's projected retirement sixteen employees would be eligible to participate, and that he would check further as to that number; that an employee with less seniority than plaintiff had previously participated; and, that considering that the plaintiff's retirement date was to be October 1, 2005 <u>there could be no guarantees as to the plaintiff receiving the benefit which might be available under the ERIP.</u>

(Emphasis in original.)

11

Henley has failed to establish any error in the district court's factual findings based on the evidence presented to it and the court's participation in the settlement conference.

C.

Lastly, Henley argues that the confidentiality/non-disparagement clause contained in the settlement documents was not part of the parties' agreement and violates her First Amendment rights. The provision at issue reads:

> HENLEY and the BOARD agree to refrain from making disparaging remarks about the other. [The parties] further agree to keep the terms of this Agreement and the accompanying Release confidential, including but not limited to, refraining from contracting, speaking with, communicating with, or otherwise releasing any information to the media concerning the terms of this Agreement. The BOARD agrees it shall keep the terms of this Agreement confidential to the maximum extent permitted under law.

The district court found this term to be completely in accord with the parties' settlement discussions where they agreed to keep the terms of their agreement confidential. The district court further eliminated any prior restraint concerns associated with the broad first sentence contained in this provision by ruling that the language permits Henley "to exercise her First Amendment right to freedom of speech as to any/all issues she may have with the Board so long as they do not include disparaging remarks pertinent to this case." In short, the lower court found that Henley voluntarily agreed not to discuss the settlement or make disparaging remarks about the Board related to her specific case.

"[C]onstitutional rights, like rights and privileges of lesser importance, may be contractually waived where the facts and circumstances surrounding the waiver make it clear that the party foregoing its rights has done so of its own volition, with full understanding of the consequences of its waiver." *Erie Telecomms., Inc. v. City of Erie*, 853 F.2d 1084, 1096 (3d Cir. 1988) (citing *D.H.*

12

*Overmyer v. Frick Co.*, 405 U.S. 174 (1972) and *Fuentes v. Shevin*, 407 U.S. 67 (1972)). "Such volition and understanding are deemed to be, and indeed have been held to be, present, where the parties to the contract have bargaining equality and have negotiated the terms of the contract, and where the waiving party is advised by competent counsel and has engaged in other contract negotiations." *Id.*

Again, we find no error in the district court's specific factual finding. The lower court found that the confidentiality provision was agreed to by both parties after negotiations with counsel and the court. It did not find that Henley voluntarily relinquished any First Amendment rights other than those specifically related to the parties' particular dispute, and it was not error to conclude that this term was part of the parties' bargain to resolve the case. The Board's legitimate interest in resolving the underlying claims and the specific right waived (not to make disparaging remarks about Henley's case only) are closely related, they arise from the same set of circumstances, and Henley received significant consideration for giving up her right to seek recovery at trial.

III.

For the forgoing reasons, we AFFIRM the district court's order denying Henley's motion to reopen the case.